**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PATRICIA GATLING-BROOKS<br><br>                    Plaintiff,<br><br>- against –<br><br>LIBERTY MUTUAL INSURANCE CO.,<br>LIBERTY MUTUAL GROUP, INC.,<br>IRONSHORE MANAGEMENT, INC.,<br>IRONSHORE INSURANCE SERVICES LLC,<br>MICHAEL POLICASTRO, and JOSE<br>CARABALLO<br><br>                    Defendants. | Case No.<br><br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Gatling-Brooks, by and through her undersigned attorneys, hereby files this Complaint against Liberty Mutual Insurance Co. ("Liberty Insurance"), Liberty Mutual Group, Inc. ("Liberty Group") and Ironshore Management, Inc. ("Ironshore Management") and Ironshore Insurance Services LLC (Ironshore Services"), Michael Policastro, ("Policastro") and Jose Caraballo ("Caraballo") (Collectively "Defendants") states as follows:

## INTRODUCTION

1. Defendant Ironshore Management and Ironshore Services (collectively "Ironshore") hired Gatling-Brooks as a temporary employee in 2014.  On or about October 10, 2016, Defendant Ironshore hired Patricia Gatling Gatling-Brooks as a permanent employee as a Corporate Travel Coordinator.  In or about 2017 Defendant Ironshore merged with Defendant Liberty Insurance and Liberty Group (collectively "Liberty Mutual").  On or about August 8, 2018, Liberty Insurance and Liberty Group (collectively "Liberty Mutual") hired Gatling-Brooks as a pre-underwriter.  The title later changed to Account

Analyst.  Her job duties required her to assist with underwriting insurance policies for the Defendant Liberty Mutual.

2.   During her employment with Defendant Ironshore and Defendant Liberty Mutual, Gatling-Brooks complained about discrimination based on race and color.  Gatling-Brooks complained to Defendant Michael Policastro, her immediate supervisor, Jessica So, Defendant Policastro's supervisor, other employees, and numerous Human Resources employees.  Defendants repeatedly found no discrimination and failed to address her root concerns.  Instead, Defendants retaliated against Gatling-Brooks by among other things, issuing negative performance evaluations, placing her on probation, issuing a final warning, selectively disciplining her for alleged infractions, but not disciplining non African-American employees for the same acts, denying her a raise, denying her a bonus, increasing her supervision, and generally treating her less well than her co-workers. Additionally, Gatling-Brooks was not paid for all hours she worked.

3.   Gatling-Brooks alleges, pursuant to Title VII of the Civil Rights Law of 1964, 42 USC 2000e et seq., the New York State Human Rights Law, Exec Law §290 et seq., New York City Human Rights Law ("NYCHRL") N.Y.C. Admin. Code § 8-101 *et seq.*, the Fair Labor Standard Act ("FLSA") 29 U.S.C. §200 et seq., and the New York Labor Law, that she is entitled to recover from Defendants declaratory relief, unpaid wages, overtime, back pay, mental anguish, punitive damages, liquidated damages, interest, attorneys' fees and costs, and other appropriate legal and equitable relief.


**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §2l6(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

6. Plaintiff received a right to sue letter from the EEOC dated July 19, 2022 and postmarked July 20, 2022.  This complaint is timely filed.

7. A copy of this complaint will be filed with the New York State Attorney General's office, New York City Corporation Counsel, and the New York City Commission of Human Rights.

## PARTIES

8. Gatling-Brooks is a natural person and resident of New Jersey.

9. Defendant Liberty Mutual Group, Inc. is a Massachusetts corporation doing business at 28 Liberty Street, New York, NY.

10. Liberty Mutual Group, Inc. is a Massachusetts corporation doing business at 28 Liberty Street, New York, NY.

11. Ironshore Management, Inc. is a Delaware corporation doing business at 28 Liberty Street, New York, NY.

12. Ironshore Insurance Services LLC is a domestic corporation doing business at 28 Liberty Street, New York, NY.

13. Defendant Michael Policastro is a natural person and employee of Defendant Liberty.

14. Defendant Caraballo is a natural person and employee of Defendant Liberty and resides in New York City.

15. Defendant Liberty and Defendant Ironshore employ four or more employees.

16. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

17. At all relevant times, Defendants, had gross annual revenues in excess of $500,000.

18. At all times relevant to this action, Defendants were employers of Gatling-Brooks pursuant to the Title VII, NYSHLR, NYCHLR, FLSA and NYLL.

19. At all times relevant to this action, Gatling-Brooks was an employee of Defendants pursuant to Title VII, NYSHLR, NYCHLR, FLSA and NYLL.

## STATEMENT OF FACTS

20. Defendant Ironshore provides insurance on the specialty lines products such as specialty property and casualty pricing.  It offers specialty and excess and surplus insurance-based solutions and programs for U.S. – based businesses with complex and unique risks.

21. In or about 2017, Defendant Ironshore became a 100% owned subsidiary of Defendant Liberty Mutual.

22. Defendant Liberty Mutual is the 6th largest global property and casualty insurer.

23. Gatling-Brooks appears to be and identifies as a dark skinned African-American woman.

24. At all times relevant to this complaint, Gatling-Brooks' work address was 28 Liberty Street, New York, NY 10005.

25. In or about 2014, Defendant Ironshore hired Gatling-Brooks to work as a temporary Senior Level Corporate Travel Coordinator.

26. Gatling-Brooks' duties required her to make travel arrangements for Defendant Ironshore's senior management.

27. On or about October 10, 2016, Defendant Ironshore hired Gatling-Brooks as a permanent employee.

28. On or about August 8, 2018, Defendant Liberty Mutual hired Gatling-Brooks to work as a Data Analysis Rating Team ("DART") Pre-Underwriter.

29. After a period of time, Gatling-Brooks' job title changed to Account Analyst.

30. At all times, Gatling-Brooks' duties included assisting underwriters and helping determine whether Defendants should issues insurance policies for applicants.

31. Gatling-Brooks' duties included among other things: evaluating applications for insurance, conducting research on applicants for insurance applications, providing advice about the insurability of applicants, and assisting underwriters and brokers with issuing insurance binders to potential and returning customers.

32. Defendant Michael Policastro supervised the DART Team, which consisted of approximately 4-5 Account Analysts.

33. Gatling-Brooks performed her duties satisfactorily.

34. Gatling-Brooks was qualified to perform the duties.

35. Over the years, Gatling-Brooks, on her own initiative created instruction manuals to help her co-workers follow procedures.

36. Gatling-Brooks was qualified to work as an Account Analyst.

**Gatling-Brooks Complains of Discrimination at Work**

37. In 2017, Gatling-Brooks complained to Defendant Ironshore that she was a victim of discrimination at work.

38. On or about Monday, April 10, 2017, Plaintiff came to work and discovered that her workspace was cordoned off with a wall of office furniture.

39. Gatling-Brooks shared her office with Jadiz Doria, a Latina.

40. Gatling-Brooks' co-worker, Defendant Caraballo, walked into Gatling-Brooks' office and stated in an unpleasant mocking tone to Gatling-Brooks in sum and substance "What's up with the wall?"

41. No one claimed responsibility for moving office furniture and creating a wall.

42. Gatling-Brooks believed that the furniture was placed in that manner only because she is African-American.

43. This is based on the strained relationship she had with Doria and Defendant Caraballo during her employment.  Doria and Defendant Caraballo exchanged pleasantries with and spoke to other co-workers, but not with her.  Gatling-Brooks was the only African-American on the Corporate Travel Team.

44. Defendant Caraballo and Doria appear to be and identify as Latino. Defendant Caraballo and Doria do not appear to be or identify as African-American.

45. On May 2, 2017, Gatling-Brooks complained about discrimination and a hostile work environment to her supervisor Michael McLaughlin.

46. On June 2, 2017, Gatling-Brooks complained about discrimination and a hostile work environment to Lisa Engelson, a Human Resources manager.

47. Neither McLaughlin nor Engelson took steps to allay Gatling-Brooks' concerns.

48. In 2018, Defendant Caraballo made statements to Gatling-Brooks that had the effect of questioning her ability and making her feel incompetent.  By way of example, Defendant Caraballo walked up to Gatling-Brooks in public and said in an unpleasant condescending tone to Gatling-Brooks **"you seem to be having trouble."**  He then walked away.

49. In or around September 2018, Gatling-Brooks complained to Defendant Policastro about Defendant Caraballo demeaning and discriminatory behavior.

50. Defendant Policastro did not take steps to address Gatling-Brooks' concerns.

51. Defendant Caraballo and Gatling-Brooks rarely spoke unless absolutely required to complete the work.

**Gatling-Brooks Experiences Discrimination and Retaliation in the DART Team**

52. Defendant Policastro delivered Gatling-Brooks' performance review on March 1, 2019, for calendar year 2018.

53. Gatling-Brooks had earned a bonus by doing among other things working throughout the entire year and satisfactorily performing her duties.

54. Defendant Policastro refused to provide Gatling-Brooks with a bonus for her work.

55. Defendant Policastro refused to explain why Gatling-Brooks was not receiving a bonus for her work, while other members of the DART Team received a bonus.

56. Gatling-Brooks complained to human resources and she was issued a small bonus of $1,000.00.

57. A bonus of $1,000.00 is smaller than what Gatling-Brooks earned pursuant to Defendants' method for calculating bonuses.

58. On or about May 7, 2020, Elise Millner, an underwriter, complained to Defendants Jose Caraballo and Policastro about Gatling-Brooks.

59. Millner accused Gatling-Brooks of not being able to find basic information needed for Milner's work.

60. Gatling-Brooks had requested Millner tell her where to find information so that Gatling-Brooks could complete the tasks.

61. Defendant Caraballo completed Gatling-Brooks' assignment without consulting or notifying Gatling-Brooks. As a result of Defendant Caraballo's actions Gatling-Brooks looked incompetent in front of the underwriter.

62. Additionally, Defendant Policastro reprimanded Gatling-Brooks for allegedly not doing her job properly.

63. Within a week, other members of the DART Team told Defendant Caraballo and Defendant Policastro that they consistently had trouble finding basic information on Millner's work, yet, only Gatling-Brooks was singled out for allegedly not doing her job.

64. Gatling-Brooks told Defendant Policastro that she was being targeted and a victim of discrimination.

65. Defendant Policastro did not take steps to address Gatling-Brooks' concerns.

66. In or about June 2020, Defendant Caraballo made an offensive discriminatory statement about Black people and chicken to Gatling-Brooks and co-workers.

67. Gatling-Brooks complained to Defendant Policastro who took no steps to address her concerns.

68. Defendant Caraballo failed to acknowledge that his statement was inappropriate or to issue an apology for his statement.

69. Defendant Caraballo's comment further supported Gatling-Brooks' belief that she was experiencing discrimination, a hostile work environment and retaliation.

70. On or about February 5, 2021, Gatling-Brooks received her performance review and received a "met expectations" rating.

71. On her own initiative, Gatling-Brooks' created process documents for the DART Team, which her co-workers found helpful.

**Gatling-Brooks Complains about Defendant Caraballo Becoming Her Supervisor**

72. In or about February 2021, Defendant Caraballo became the supervisor of the DART Team.

73. The supervisor position was not advertised, which is contrary to Defendant Liberty Mutual's usual practice of internally posting open positions company-wide; thereby, notifying and providing interested employees an opportunity to apply.

74. Defendant Policastro made the decision to appoint Defendant Caraballo to supervisor.

75. Gatling-Brooks told Defendant Policastro that she could not believe that Defendant Caraballo, a man she had accused of discriminating against her for nearly four years, was made her supervisor.

76. On February 17, 2021, Gatling-Brooks contacted Human Resource and asked not to work under Defendant Caraballo's supervision due to her numerous complaints that he had discriminated against her over the years.

77. Gatling-Brooks wanted to be transferred from DART Team.

78. On or about May 7, 2021, Tammy Bassett contacted Gatling-Brooks and stated that Defendant Liberty Mutual would not remove Gatling-Brooks from Defendant Caraballo's supervision.

79. Defendants had the option of transferring Gatling-Brooks to another unit.

80. Defendants refused to transfer Gatling-Brooks.

**Gatling-Brooks Suffers from Retaliation (June 2021 through December 2021)**

81. On May 5, 2021, Gatling-Brooks filed a complaint with the New York State Division of Human Rights (NYSDHR") alleging discrimination.

82. On or about July 22, 2021, Defendants filed a response to Gatling-Brooks' complaint with the NYSDHR.

83. After Gatling-Brooks filed her complaint with the NYSDHR, Defendants began to find fault with Gatling-Brooks' work and gave her multiple verbal warnings.

84. By way of example, on or about June 2, 2021, management accused Gatling-Brooks of improperly doing her job by not responding to an account on the day it was received.

85. Gatling-Brooks indicated that the account was not assigned to her before she left at the end of the day.

86. Without adequately investigating the facts, Defendants accused her of improperly doing her job and issued a written warning in January 2022.

87. A written warning is a form of discipline.

88. Discipline can negatively impact Gatling-Brooks' employment with Defendants.

89. On or about July 22, 2022, Defendants accused Gatling-Brooks of improperly sending an email to Rick Stevens, an underwriter directing him to perform specific tasks.

90. However, Gatling-Brooks did not send the email to Stevens.

91. On or about July 22, 2021, Gatling-Brooks contacted a Defendant Liberty Mutual employee outside of the DART Team and learned that the email was sent automatically by the computer system under her name.  It was a new procedure.

92. Defendant Caraballo verbally reprimanded for allegedly sending the email to Stevens.

93. A verbal reprimand is a form of discipline.

94. Discipline can negatively impact Gatling-Brooks employment with Defendants.

95. On July 28, 2021, Defendant Caraballo made Gatling-Brooks the only DART Team Account Analyst assigned to multinational accounts.

96. Multinational accounts are among the most challenging tasks for the DART Team as they accounts are very detailed, take longer to process and require coordination with people from around the world.

97. There is greater risk for problems to arise with a multinational account simply due to the complexity of the tasks.

98. Defendants put Gatling-Brooks in a position to fail at her job.

99. Defendants also reduced Gatling-Brooks' ability to learn about other products offered by Defendants, since so much of her time was spent working on multinational accounts.

100. On about September 3, 2021, Defendant Michael Policastro's supervisor, Jessica So, contacted Gatling-Brooks and expressed concerns based on the inaccurate information provided to her by Defendant Policastro and Defendant Caraballo.

101. So stated that Gatling-Brooks among other things improperly directed underwriters to perform DART Teams tasks and that Gatling-Brooks maintained that she does not need to report to Defendant Caraballo.

102. By November 2021, Defendant Caraballo increased his supervision over Gatling-Brooks by requiring her to meet with him weekly.

103. Defendant Caraballo drafted a summary of the meeting, which did not accurately capture what they discussed. Additionally, the meeting summaries did not fairly reflect Gatling-Brooks' work.

104. On December 14, 2021, Defendant Caraballo issued an email that purported to identify six incidents of alleged problems with Gatling-Brooks' work.

105. On December 14, 2021, Defendant Caraballo issued another email that purported to identify eight incidents of alleged problems with Gatling-Brooks' work.

106. Gatling-Brooks asked Defendant Caraballo to provide her with documentation that supported his accusations.

107. Defendant Caraballo failed to provide her with documentation to support the accusations.

108. Gatling-Brooks provided Defendant Caraballo with documentation that showed the accusations were all inaccurate.

109. Defendant Caraballo failed to withdraw the accusations.

110. Gatling-Brooks questioned why she was the only DART Team member singled out for discipline, when other DART Team members did the same thing, but were not disciplined.

111. On January 4, 2022, Gatling-Brooks and Defendant Caraballo met to discuss five multinational accounts that Gatling-Brooks received on December 29, 2022, which he claimed were improperly managed.

112. Gatling-Brooks asked Defendant Caraballo to provide her with documentation that supported his accusations.

113. Defendant Caraballo failed to provide her with documentation to support the accusations.

114. Gatling-Brooks provided Defendant Caraballo with documentation that showed the accusations were all inaccurate.

115. Defendant Caraballo failed to withdraw the accusations.

116. Gatling-Brooks questioned why she was the only DART Team member singled out for discipline, when other DART Team members did the same thing, but were not disciplined.

117. On January 28, 2022, Defendant Caraballo gave Gatling-Brooks her performance review for calendar year 2021.

118. Defendants rated Gatling-Brooks as "partially met expectations".

119. The performance review inaccurately captured Gatling-Brooks' performance.

120. By way of example, Gatling-Brooks was told that she had to "Learn and expand knowledge about the products offered by IronPro, how they work and how they are rated."

121. In the prior year's evaluation, Gatling-Brooks "met expectations."  Gatling-Brooks was familiar with all products offered by IronPro.

122. Additionally, Gatling-Brooks was accused of not responding to accounts that were assigned to her between November 24, 2021 through December 5, 2021.

123. Gatling-Brooks was on vacation at that time, Defendant Caraballo and Defendant Policastro knew that work should not be assigned to her, yet they failed to take appropriate steps to ensure that work would not be assigned to Gatling-Brooks while she was not at work.

124. Gatling-Brooks asked Defendant Caraballo to provide her with documentation that supported his accusations.

125. Defendant Caraballo failed to provide her with documentation to support the accusations.

126. Gatling-Brooks provided Defendant Caraballo with documentation that showed the accusations were all inaccurate.

127. Defendant Caraballo failed to modify the evaluation.

128. Gatling-Brooks questioned why she was the only DART Team member singled out for discipline, when other DART Team members did the same thing, but were not disciplined.

129. On January 31, 2022, Defendants provided Gatling-Brooks with a job performance written warning.

130. On February 7, 2022, Defendant Caraballo issued an email that purported to identify twelve incidents of alleged problems with Gatling-Brooks' work.

131. On February 24, 2022, Defendant Caraballo issued an email that purported to identify eight incidents of alleged problems with Gatling-Brooks' work.

132. On March 11, 2022, Defendant Caraballo issued an email that purported to identify job performance issues with Gatling-Brooks' work.

133. On March 21, 2022, Defendants issued Gatling-Brooks with a Policy Violation Written Warning.

134. On April 1, 2022, Defendants placed Gatling-Brooks on probation.

**Gatling-Brooks Again Complains about Discrimination and Retaliation in 2021 and 2022**

135. Gatling-Brooks realized that she was unfairly being monitored and disciplined by Defendant Caraballo.  She again complained about discrimination and retaliation.

136. On or about October 26, 2021, Gatling-Brooks contacted the Compliance Department to discuss the discrimination, hostile work environment and retaliation she experienced.

137. Gatling-Brooks was referred back to Human Resources, where her other complaints had not been addressed.

138. On December 5, 2021, Gatling-Brooks filed a second complaint with the NYSDHR alleging discrimination and retaliation.

139. On January 4, 2022, Gatling-Brooks emailed human resources and complained about being chastised by Defendant Policastro.

140. Defendants failed to address the concerns raised in this email.

141. On January 7, 2022, Gatling-Brooks emailed Defendants Jose Caraballo and Policastro stating that they misrepresented her work and that she was a victim of discrimination and retaliation.

142. Defendants failed to address the concerns raised in this email.

143. On January 14, 2022, Gatling-Brooks emailed Molly Izard-Gibb of Human Resources about continued discrimination and misrepresentation of her work.

144. Defendants failed to address the concerns raised in this email.

145. On January 20, 2022, Gatling-Brooks emailed Defendant Caraballo and Defendant Policastro about being a victim of discrimination and harassment.

146. Defendants failed to address the concerns raised in this email.

147. On March 23, 2022, Gatling-Brooks emailed Defendant Caraballo, Defendant Policastro, a number of managers and human resources stating that she is a victim of discrimination, harassment and retaliation.

148. Defendants failed to address the concerns raised in this email.

149. On June 6, 2022, Gatling-Brooks again renewed her request that Defendants transfer her away from the DART Team.

150. Defendants failed to address the concerns raised in this email.

**Defendants Failed to Pay Gatling-Brooks Statutory Overtime**

151. Gatling-Brooks was scheduled to work from 8:00 AM to 4:00 PM Monday through Friday for a total of eight (8) hours per day.  Gatling-Brooks had 30 minutes for lunch.

152. Gatling-Brooks was regularly scheduled to work 37.5 hours per week.

153. Defendants required Gatling-Brooks to complete her assigned tasks in a very short time frame.

154. Due to the nature of the work, inquiries assigned to Gatling-Brooks needed to be addressed in a very short time frame.

155. In order to ensure the work was done timely and properly, Gatling-Brooks worked from 7 AM – 4:30 PM.

156. Gatling-Brooks also worked up to 3 hours every weekday evening.

157. Gatling-Brooks also worked up to three hours each weekend day.

158. In order to ensure the work was done properly, all members of the DART team worked outside of their regularly scheduled hours.

159. Gatling-Brooks' supervisors, Defendants Jose Caraballo and Policastro knew that Gatling-Brooks and members of the DART Team worked outside of their regularly scheduled hours.

160. Defendant Caraballo and Defendant Policastro sent and received emails from members of the DART Team outside of the members regularly scheduled hours.

161. Defendant Caraballo and Defendant Policastro made and received telephone calls from members of the DART Team including Gatling-Brooks outside of regularly scheduled hours.

162. Defendants did not have a system to accurately records the hours worked by Gatling-Brooks and members of the DART Team.

163. Gatling-Brooks worked no less than 57.5 hours per week.

164. Gatling-Brooks' hourly rate was varied between 32.19 through $36.73 per hour for the time period September 2018 through the present.

165. Defendants paid Gatling-Brooks a fixed amount each week regardless of the number of hours worked in excess of 40 hours per week.

166. Defendants did not pay Gatling-Brooks an overtime premium.

167. Gatling-Brooks complaint which she filed with the NYSDHR referenced failure to pay wages.

168. On or about May 19, 2021, Gatling-Brooks spoke with Tammy Bassett from Human Resources regarding compensation for overtime Gatling-Brooks worked.

169. On or about July 28, 2021, Tammy Bassett directed Gatling-Brooks to not work outside of her regularly scheduled hours without permission.

170. In or about July 2021, Tammy Bassett instructed Gatling-Brooks to state the number of overtime hours Defendants failed to pay Gatling-Brooks.

171. Gatling-Brooks requested that Tammy Bassett provided Gatling-Brooks with information which showed when she signed in and out of her computer.

172. The hours that Gatling-Brooks signed in and out of her computer indicated the hours Gatling-Brooks worked.

173. Tammy Bassett failed to provide Gatling-Brooks with that information which showed when Gatling-Brooks signed in and out of her computer.

174. Defendants have not paid Gatling-Brooks earned but unpaid overtime premiums.

175. Plaintiff was neither responsible for, nor allowed to make, relevant decisions regarding policy, procedures, or protocol.

**Defendants Retaliate Against Gatling-Brooks for Asking About Overtime Payments**

176. Defendants proceeded to write Gatling-Brooks for working outside of her normally scheduled work hours for the following dates: December 29, 2021, January 13, 2022, January 14, 2022, and March 4, 2022.

177. Gatling-Brooks worked approximately 1 ½ to 2 ½ hours over those four dates to complete work assignments.

178. Gatling-Brooks requested approval for overtime.  It was routinely denied.

179. Gatling-Brooks' co-workers are able to work overtime without being penalized.  For example, in 2021 and 2022 Joseph Caruso and Shakima Taylor worked outside of their scheduled hours on a regular basis.  They were not disciplined for working outside of his normal hours.

180. Caruso worked approximately one hour before his shift and stopped working one hour after his scheduled shift.

181. Additionally, Caruso's requests for overtime were approved, while Gatling-Brooks' request for overtime are not approved with one exception.

182. Defendant Caraballo appears to be and identifies as a white male.

183. Plaintiff was subject to the control, policies, and procedures of Defendant in making decisions in the course of his employment.

184. Plaintiff was and is entitled to be paid for all hours she worked for Defendant.

185. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Gatling-Brooks for her hours worked in excess of forty hours per workweek in violation of 29 USC §§ 206 and 207. Records, if any, concerning the number of hours worked by Gatling-Brooks and the actual compensation paid to Plaintiff should be in the possession and custody of the Defendants.   Plaintiff intends to obtain these records by appropriate discovery

proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory rate of time and one-half for his hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

186. Plaintiff is entitled to be paid (i) at the regular rate of pay for all hours worked less than forty (40) in a week, and (ii) the greater of one and half times the minimum wage or his regular rate of pay for each hour in excess of forty (40) hours that they worked in any work week pursuant to the FLSA and NYLL and implementing regulations.

187. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA

188. Defendants failed to give Plaintiff a written notice of the regular hourly pay rate, overtime hourly pay rate, the amount of tip credit as required by the FLSA and NYLL and the implementing regulations.

189. Defendants failed to give Plaintiff a written notice of any credits as required by the NYLL and the implementing regulations.

190. Defendants are not entitled to any credits to the minimum wage.

191. Defendants failed to provide Plaintiff with the notices required by NYLL §195(1).

192. Defendants violated NYLL § 195(3) by failing to furnish Plaintiff with a statement with every payment of wages, listing, among other things, hours worked, rates paid, gross wages, deductions, and net wages.

193. At all relevant times, Defendants failed to post and/or keep posted in places regularly assessable to Plaintiff "notices issued by the Department of Labor about wage and hour

laws, tip appropriations, illegal deduction provisions and any other labor laws that the Commissioner shall deem appropriate," in violation of 12 N.Y.C.R.R. §146-2.4.

194. Defendants' posting, wage statement, and notice violations prevented Plaintiff from knowing her legal rights and from figuring out exactly how many hours for which he was not compensated.

## FIRST CAUSE OF ACTION

### Title VII of the Civil Rights Act of 1964
### Race and Color Discrimination
### (As to Liberty Mutual Insurance Co., Liberty Mutual Group, Inc., Ironshore Management, Inc., and Ironshore Insurance Services LLC)

195. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

196. Title VII §703 (a) provides in pertinent part "It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color…"

197. As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment and created a hostile work environment in violation of Title VII §703.

198. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future

physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including 42 U.S.C. §1981a.

## SECOND CAUSE OF ACTION

### Title VII of the Civil Rights Act of 1964
### Retaliation
### (As to Liberty Mutual Insurance Co., Liberty Mutual Group, Inc., Ironshore Management, Inc., and Ironshore Insurance Services LLC)

199. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

200. Title VII §704 (a) provides in pertinent part "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … to discriminate against any individual, … because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

201. As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment in violation of Title VII §704.

202. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including 42 U.S.C. §1981a.

## THIRD CAUSE OF ACTION

**New York State Human Rights Law**
**Race and Color Discrimination**
**(As to all Defendants)**

203. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

204. NYSHRL §296(a) provides "It shall be an unlawful discriminatory practice: (a) For an employer … because of an individual's … race [or] color…, refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

205. As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment and created a hostile work environment in violation of NYSHRL §296(1).

206. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including NYSHRL §297(9).

**FOURTH CAUSE OF ACTION**

**New York State Human Rights Law**
**Aiding and Abetting**
**(Defendants Jose Caraballo and Michal Policastro)**

207. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

208. NYSHRL §296(6) provides in pertinent part "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

209. As outlined above Defendants Caraballo and Policastro engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment in violation of NYSHRL §296(6).

210. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including NYSHRL§297(9).

**FIFTH CAUSE OF ACTION**

**New York State Human Rights Law**
**Retaliation**
**(As to all Defendants)**

211. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

212. NYSHRL §296(7) provides in pertinent part "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

213. As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment in violation of NYSHRL §296(7).

214. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including NYSHRL§297(9).

**SIXTH CAUSE OF ACTION**

**New York City Human Rights Law**
**Race and Color Discrimination**
**(As to all Defendants)**

215. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

216. NYCHRL §8-107(1) provides in pertinent part that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person; or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

217. As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiffs' employment based on age, created a hostile work environment and terminating their employment in violation of NYCHRL §8-107.

218. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including NYCHRL §8-502.

## SEVENTH CAUSE OF ACTION FOR DISCRIMINATION

### New York City Human Rights Law
### Employer Liability
### (Defendants Jose Caraballo and Michal Policastro)

219. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

220. NYCHRL §8-107(13) makes an employer liable for the discriminatory conduct of an employee who exercised managerial or supervisory responsibility, or where the employer knew of discriminatory conduct and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility.

221. As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's in violation of NYCHRL §8-107(15).

222. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including NYCHRL §8-502.

**EIGHTH CAUSE OF ACTION**

**New York City Human Rights Law**
**Aiding and Abetting**
**(Defendants Jose Caraballo and Michal Policastro)**

223. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

224. NYCHRL §8-107(6) provides in pertinent part "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

225. As outlined above Defendants Caraballo and Policastro engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment in violation of NYSHRL §8-107(6).

226. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and further lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest pursuant to the law including NYCHRL §8-502.

## NINTH CAUSE OF ACTION

### New York City Human Rights Law
### Retaliation
### (As to all Defendants)

227. Plaintiff realleges and incorporates by reference all facts and allegations in all preceding paragraphs.

228. NYCHRL §8-107(7) prohibits discrimination based on retaliation.

229. "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter." NYCHRL §8-107(7).

230.  As outlined above Defendants engaged in unlawful discriminatory practice in the terms, conditions and privileges of Plaintiff's employment

231.  Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, damages to compensate for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees, costs, and pre-judgment interest pursuant to the law including NYCHRL §8-502.

## TENTH CAUSE OF ACTION

### Violation of the Fair Labor Standards Act
### Failure to Pay Overtime\
### (As to all Defendants)

232.  Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

233.  The overtime wage provisions set forth in FLSA and the supporting federal regulations apply to Defendant and protect Plaintiff.

234.  Defendants has failed to pay Plaintiff overtime wages for all of the hours worked in excess of forty (40) hours in a work week.

235.  Defendants has engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

236. At all times relevant, Plaintiff was employed by Defendants, an entity engaged in commerce and/or engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 USC §§ 203(e), (m) and 206 (a), and/or engaged in commerce and/or production or sale of goods for commerce with the meaning of 29 USC §§ 203(e), (m) and 206(a).

237. At all relevant times, Plaintiff was an employee of Defendants within the meaning of FLSA §203(e), (m) and 206 (a).

238. At all relevant times Defendants has been employers of Plaintiff engaged in commerce and/or the production of goods for commerce within the meaning of 29 USC §§ 203(e) and 206(a).

239. Defendants failed to post and keep posted in a conspicuous place on their premises a notice explaining the FLSA, as prescribed by the Wage and Hour Division of the U. S. Department of Labor in violation of FLSA §203 (m) and supporting regulations, including but not limited to 29 CFR §516.4.

240. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

241. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.  Defendants was aware or should have been aware that the practices described in the Complaint are unlawful.  Defendants had not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

242. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to FLSA §225.

243. As a result of Defendants' FLSA violations, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorneys' fees, costs, and other compensation pursuant 29 USC §216 (b).

### ELEVENTH CAUSE OF ACTION

### Fair Labor Standards Act
### Retaliation
### (As to all Defendants)

244. Plaintiff realleges and incorporates by reference all facts and allegations set forth in all preceding paragraphs.

245. It is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to

testify in any such proceeding or has served or is about to serve on an industry committee." FLSA §215(a)(3).

246. As outlined above, Defendants engaged in unlawful actions by retaliating against Plaintiff by among other things failing to approve Plaintiff for overtime, unfairly disciplining Plaintiff and creating a hostile work environment.

247. As a result of Defendants' unlawful acts, Plaintiff has been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, in addition to liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to FLSA §216(b).

### TWELFTH CAUSE OF ACTION

### New York Labor Law
### Failure to Pay Wages
### (As to all Defendants)

248. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

249. Wages are "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission, or other basis. The term "wages" also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article." Pursuant to NYLL 190(1).

250.  A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned, pursuant to NYLL §191(1)(a).

251.  Defendants knowingly and intentionally failed to pay Plaintiff hourly wages for work performed as required by the NYLL and the supporting New York State Department of Labor regulations.

252.  As a result of Defendants' unlawful acts, Plaintiff has been deprived of wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorneys' fees, costs, and other compensation pursuant to the NYLL § 198 and § 663.

### THIRTEENTH CAUSE OF ACTION

<u>**New York Labor Law**</u>
<u>**Notice & Wage Statement Violations**</u>
<u>**(As to all Defendants)**</u>

253. Plaintiff realleges and incorporates by reference all facts and allegations set forth in all preceding paragraphs.

254. Defendants  have willfully failed to supply Plaintiff with the notice required by NYLL §195(1), in English or in the languages identified by Plaintiff as the  primary language, containing their "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate  or rates of  pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer;

any 'doing business as' names used by the employer; the physical address  of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

255. Defendants have willfully failed to supply Plaintiff with an accurate statement of wages as required by NYLL §195(3), containing the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked,  including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

256. Due to Defendants' violations of NYLL §195(1), Plaintiff is entitled to $50 for each workweek in which the violations occurred or continue to occur, or a total of $5,000.00 as provided for by NYLL §198(1)-b, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief.

257. Due to Defendants' violations of NYLL §195(3), Plaintiff is entitled to recover from Defendants $250.00 for each week worked on or after April 9, 2011, in which the violations occurred or continue to occur, or a total of $5,000.00, as provided for by NYLL §198(1)-d.

# FOURTEENTH CAUSE OF ACTION

## <u>New York Labor Law</u><br><u>Retaliation</u><br><u>(As to all Defendants)</u>

258. Plaintiff realleges and incorporates by reference all facts and allegations set forth in all preceding paragraphs.

259. NYLL §215 prohibits retaliation against an employee who advocates for rights related to being paid wages.

260. "No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general, or to any other person that the employer has violated any provision of this chapter, or any order issued by the commissioner (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter, or (iv) because such employee has provided information to the commissioner or his or her authorized representative or the attorney general, or (v) because such employee has testified or is about to testify in an investigation or proceeding under this chapter, or (vi) because such employee has otherwise exercised

rights protected under this chapter, or (vii) because the employer has received an adverse determination from the commissioner involving the employee.  An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section."  NYLL §215.

261. As outlined above, Defendants engaged in unlawful actions by retaliating against Plaintiff by among other things failing to approve Plaintiff for overtime, unfairly disciplining Plaintiff and creating a hostile work environment.

262. As a result of Defendants' unlawful acts, Plaintiff has been deprived of compensation and other wages in amounts to be determined at trial, and are entitled to recovery of all legal damages including liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to NYLL §215.

## PRAYER FOR RELIEF

WHEREFORE, Gatling-Brooks respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under Title VII, New York State Division of Human Rights, New York City Human Rights, the FLSA and the New York Labor Law;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth

herein;

c.    An award of minimum unpaid wages and overtime compensation;

d.    An award of liquidated and/or punitive damages as a result of Defendant' willful

failure to pay minimum wage and overtime compensation;

e.    An award of damages for notice and wage statement violations;

f.    An award of prejudgment and post judgment interest;

g.    An award to Plaintiff for actual damages for financial harm, lost wages, benefits, and

promotional opportunities, including an award of front pay compensation, loss of

future salary;

h.    An award to Plaintiff for his compensatory damages for humiliation, mental anguish,

embarrassment and emotional distress;

i.    An award to Plaintiff for punitive damages;

j.    An award of costs and expenses of this action together with reasonable attorneys' and

expert fees;

k.    An award of such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.


Dated: Bronx, NY
            October 20, 2022

                                            Respectfully submitted,


                                            _____/s/_____

Delmas A. Costin, Jr., Esq.
The Law Ofc. Of Delmas A. Costin, Jr., PC.
930 Grand Concourse
Suite 1F
Bronx, NY 10451
Tel: (718) 618-0589
Fax: (347) 510-0099
dacostin@dacostinlaw.com

*Attorneys for Gatling-Brooks*