UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA GATLING-BROOKS,<br><br>Plaintiff,<br><br>-against-<br><br>LIBERTY MUTUAL INSURANCE CO., LIBERTY MUTUAL GROUP, INC., IRONSHORE MANAGEMENT INC., IRONSHORE INSURANCE SERVICES LLC, MICHAEL POLICASTRO, JOSE CARABALLO, BRENDAN MCLAUGHLIN, JOHN DOE #1 and #2, and JANE ROE #1 and #2,<br><br>Defendants. | Case No. 1:22-cv-08979 (ALC) |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' FOURTH MOTION TO DISMISS AND MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

**LITTLER MENDELSON, P.C.**
William J. Anthony
H. Keith Belfield
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
wanthony@littler.com
kbelfield@littler.com

*Attorneys for Defendants Liberty Mutual Group Inc., Michael Policastro, Jose Caraballo, and Brendan McLaughlin*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........ 1

II. STATEMENT OF RELEVANT ALLEGATIONS ........ 3

A. Overview of Plaintiff's Employment. ........ 3

B. Plaintiff's Alleged Complaints of Discrimination. ........ 3

C. Plaintiff's Complaints of Alleged Wage and Hour Violations. ........ 4

D. Plaintiff's 2022 Medical Leave. ........ 4

E. Plaintiff's Return to Work in March 2024. ........ 5

F. Plaintiff's January 2025 Termination ........ 5

III. LEGAL ARGUMENT ........ 6

A. Plaintiff's Fifth Amended Complaint Continues to Violate Rule 8. ........ 6

B. The Fifth Amended Complaint Should Be Dismissed Under Rule 12(b)(6). ........ 9

1. Certain Claims Arising Before July 9, 2020 Are Time Barred And The Continuing Violations Doctrine is Inapplicable. ........ 10

2. Plaintiff Failed to Exhaust Her Title VII and ADA Claims. ........ 11

3. Plaintiff's NYSHRL and NYCHRL Claims Fail for Lack of Jurisdiction. ........ 13

4. Plaintiff's NYLL Claims Fail as a Matter of Law. ........ 14

5. Plaintiff's Race-Based Discrimination, Retaliation, and Hostile Work Environment Claims Still Fail. ........ 15

a) Plaintiff Fails to Plead Facts Giving Rise to Any Plausible Inference of Discrimination, Retaliation, or Hostile Work Environment Under Any Applicable Statute ........ 17

6. Plaintiff Cannot Establish a Prima Facie Case of Discrimination or Retaliation Under the ADA. ........ 22

7. The Court Should Deny Plaintiff the Opportunity to Amend Her Complaint. ........ 24

8. Alternatively, the Court Should Transfer Any Remaining Claims to the District of New Jersey ........ 25

IV. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Westbury Union Free Sch. Dist.*,
829 F. Supp. 2d 89 (E.D.N.Y. 2011) ....................18, 19

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)....................17, 21, 22

*Amaya v. Ballyshear LLC*,
295 F. Supp. 3d 204 (E.D.N.Y. 2018) ....................18

*Aminov v. EC Commodities Corp.*,
No. 16-CV-4800 (AMD)(SMG), 2017 WL 9511075, at *3 (E.D.N.Y. July 6, 2017), *adopted report and recommendation*, 2018 WL 542245 (E.D.N.Y. Jan. 24, 2018) ....................14

*Anderson v. N.Y.C. Dep't of Fin.*,
No. 19-CV-7971 (RA), 2020 WL 1922624 (S.D.N.Y. Apr. 21, 2020) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................9, 13, 17, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................9, 13, 23

*Blakely v. Wells*,
209 F. App'x 18 (2d Cir. 2006) ....................7

*Brown v. City Univ. of N.Y.*,
419 F. Supp. 2d 315 (E.D.N.Y. 2005) ....................19

*Caver v. City of Trenton*,
420 F.3d 243 (3d Cir. 2005)....................21

*Cicchetti v. Morris Cnty. Sheriff's Office*,
194 N.J. 563 (2008) ....................21

*Collins v. James W. Turner Constr., Ltd.*,
No. 16-2877(FLW)(LHG), 2017 WL 210236 (D.N.J. Jan. 18, 2017)....................21

*Cowher v. Carson & Roberts*,
425 N.J. Super. 285 (App. Div. 2012) ....................21

*Cruz v. SEIU Loc. 32BJ*,
No. 19 Civ. 11836 (LGS), 2021 WL 3604661 (S.D.N.Y. Aug. 12, 2021)....................19, 21

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)....................24

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Davis v. N.Y.C. Dept. of Educ.*,
804 F. 3d 231 (2d Cir. 2015) ........ 22

*Davis-Molinia v. Port Auth. of N.Y. & N.J.*,
No. 08 CV 7584 (GBD), 2011 WL 4000997 (S.D.N.Y. Aug. 19, 2011), *aff'd*,
488 F. App'x 530 (2d Cir. 2012) ........ 21, 22

*Dimitracopoulos v. City of N.Y.*,
26 F. Supp. 3d 200 (E.D.N.Y. 2014) ........ 19

*Dowrich-Weeks v. Cooper Square Realty, Inc.*,
535 F. App'x 9 (2d Cir. 2013) ........ 14

*Edwards v. N.Y. State Unified Court Sys.*,
No. 12 Civ. 46 (WHP), 2012 WL 6101984 (S.D.N.Y. Nov. 20, 2012) ........ 10

*Fattoruso v. Hilton Grand Vacations Co.*,
873 F. Supp. 2d 569 (S.D.N.Y. 2012) ........ 17

*Fried v. LVI Servs., Inc.*,
500 F. App'x 39 (2d Cir. 2012) ........ 13

*Garcia v. Pearson Educ., Inc.*,
No. 15 Civ. 7289 (KPF), 2016 WL 5921083 (S.D.N.Y. Oct. 7, 2016) ........ 25

*Germain v. Nielsen Consumer LLC*,
655 F. Supp. 3d 164 (S.D.N.Y. 2023) ........ 14

*Gong v. City Univ. of N.Y.*,
846 F. App'x 6 (2d Cir. 2021) ........ 18

*Graham v. Macy's, Inc.*,
No. 14-CV-3192 (PAE), 2016 U.S. Dist. LEXIS 10269 (S.D.N.Y. Jan. 28,
2016), *aff'd*, 2017 U.S. App. LEXIS 1687 (2d. Cir. Jan. 31, 2017) ........ 20

*Graves v. Finch Pruyn & Co.*,
457 F.3d 181 (2d Cir. 2006) ........ 23

*Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*,
No. 16 CV 1101 (RRM)(CLP), 2018 WL 4055278 (E.D.N.Y. July 6, 2018) ........ 21, 22

*Hoffman v. Parade Publs.*,
15 N.Y.3d 285, 289-91 (2010) ........ 13, 16, 25

*Hughes v. Xerox Corp.*,
37 F. Supp. 3d 629 (W.D.N.Y. 2014) ........ 19

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Jones v. Nat'l Commc'ns & Surveillance Networks*,
266 F. App'x 31 (2d Cir. 2008) ....................6

*Kim v. Family Bob Inc.*,
No. 20-CV-906 (ENV), 2021 WL 7906544 (E.D.N.Y. Jan. 26, 2021) ....................14

*Lehmann v. Toys 'R' Us*,
626 A.2d 445 (N.J. 1993)....................17

*Leon v. Columbia Univ. Med. Ctr.*,
No. 11–CV–8559 (NSR), 2013 WL 6669415 (S.D.N.Y. Dec. 17, 2013) ....................16

*Magnello v. TJX Cos., Inc.*,
556 F. Supp. 2d 114 (D. Conn. 2008)....................11, 12, 13

*Magnuson v. Newman*,
No. 10-CV-6211 (JMF), 2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) ....................14

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................16

*McNamara v. Tourneau, Inc.*,
496 F. Supp. 2d 366 (S.D.N.Y. 2007), *aff'd*, 326 F. App'x 68 (2d Cir. 2009)....................24

*Meilus v. Rest. Opportunities Ctr. United, Inc.*,
No. 21-CV-2554 (CM), 2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021)....................13, 14

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107 (1st Dep't 2012) ....................16

*Murray v. Visiting Nurse Servs.*,
528 F. Supp. 2d 257 (S.D.N.Y. 2007)....................20

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)....................10

*Norville v. Staten Island Univ. Hosp.*,
196 F.3d 89 (2d Cir. 1999)....................23

*O'Neil v. Mermaid Touring Inc.*,
968 F. Supp. 2d 572 (S.D.N.Y. 2013)....................14, 15

*Owens v. State of N.Y. Attorney General*,
10 F. App'x 34 (2d Cir. 2001) ....................7

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007)....................20

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Perry v. Ethan Allen, Inc.*,
115 F.3d 143 (2d Cir. 1997)....................17

*Phillips v. Bowen*,
278 F.3d 103 (2d Cir. 2002)....................19

*Pierre v. Napolitano*,
958 F. Supp. 2d 461 (S.D.N.Y. 2013)....................19

*Pimentel v. City of N.Y.*,
No. 00 Civ. 326 (SAS), 2002 WL 977535 (S.D.N.Y. 2002), *aff'd*, 74 F. Appx. 146 (2d Cir. 2003)....................19

*Puris v. TikTok Inc.*,
No. 24-CV-944 (DLC), 2025 WL 343905 (S.D.N.Y. Jan. 30, 2025)....................18

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988)....................6

*Samimy v. Cornell Univ.*,
961 F. Supp. 489 (W.D.N.Y. 1997)....................11, 13

*Summa v. Hofstra Univ.*,
708 F.3d 115 (2d Cir. 2013)....................16

*Targum v. Citrin Cooperman & Co., LLP*,
No. 12 Civ. 6909 (SAS), 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013)....................9

*Warman v. Am. Nat'l Standards Inst.*,
No. 15-CV-5486 (RA), 2016 WL 3676681 (S.D.N.Y. July 6, 2016)....................14

*Wright v. White Plains Hosp. Med. Ctr.*,
237 A.D.3d 1143 (2d Dep't 2025)....................16

*Zive v. Stanley Roberts, Inc.*,
182 N.J. 436 (2005)....................16

**Statutes**

28 U.S.C. § 1391(b)(2)....................25

28 U.S.C. § 1404(a)....................25

42 U.S.C. § 2000e-5(e)(1)....................2

42 U.S.C. § 12117(a)....................2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 8 ........ *passim*

Fed. R. Civ. P. 8(a) ........ 6

Fed. R. Civ. P. 8(d) ........ 6

Fed. R. Civ. P. 12 ........ 1, 9, 13, 22

Fed. R. Civ. P. 12(b)(6) ........ 9

N.Y.C. Admin. Code § 8-502 ........ 14

N.Y.C.P.L.R. § 214(2) ........ 14

## I. PRELIMINARY STATEMENT

Despite six opportunities to comply with pleading standards and plead viable claims, Plaintiff Patricia Gatling-Brooks ("Plaintiff") still fails to cure the Rule 8 deficiencies previously identified by this Court and fails to state a claim against Defendants.[1] Accordingly, Plaintiff's Fifth Amended Complaint ("5AC") should be dismissed with prejudice.

This Court previously dismissed Plaintiff's Third Amended Complaint ("3AC") because it failed to comply with Rule 8.[2] Yet the 5AC remains a sprawling, repetitive, and confusing pleading exceeding 400 paragraphs and asserting thirty-four causes of action under numerous federal, New York, and New Jersey statutes. Rather than cure the defects identified by the Court and Defendants, Plaintiff simply inserted a handful of new allegations concerning her March 2024 return to work, alleged accommodation issues, a November 2024 Performance Improvement Plan, and her January 27, 2025, termination into an otherwise unchanged pleading.

Further, many of Plaintiff's allegations remain untimely. Plaintiff already conceded that the applicable Title VII limitations period begins on July 9, 2020. Nevertheless, the 5AC continues to rely on allegations dating back to 2017 and 2018. Those allegations are time-barred and cannot be revived through the continuing-violation doctrine.

Critically, Plaintiff also failed to exhaust the administrative remedies required for her newly added Title VII and ADA allegations. Although the 5AC now challenges events allegedly occurring after Plaintiff's March 2024 return to work, including an alleged failure to accommodate

[1] Defendants are Liberty Mutual Insurance Company (improperly named as Liberty Mutual Insurance Co.) (hereinafter, "Liberty"); Liberty Mutual Group, Inc.; Ironshore, Inc. (improperly named as Ironshore Management, Inc., and referred to herein as "Ironshore"); Ironshore Insurance Services LLC (collectively, the "Corporate Defendants"); Michael Policastro ("Policastro"); Jose Caraballo ("Caraballo"); and Brendan McLaughlin ("McLaughlin") (collectively, the "Individual Defendants," and together with the Corporate Defendants, "Defendants").

[2] After the Court dismissed the 3AC, Plaintiff filed her Fourth Amended Complaint. Defendants moved to dismiss that pleading on Rule 8 and Rule 12 grounds. Before ruling on the motion, the Court granted Plaintiff leave to file the 5AC so that the operative pleading would contain all claims Plaintiff intended to pursue. (Dkt. Nos. 100, 112)

and her January 2025 termination, Plaintiff does not allege that she filed a new EEOC charge concerning any of those events.[3] Instead, she attempts to graft entirely new employment claims onto administrative filings that predate those actions by several years and allege no such claims.

Plaintiff's New York statutory claims undoubtedly fail as a matter of law. Plaintiff continues to allege that she is a New Jersey resident who has worked primarily from her New Jersey home since November 2018. Those allegations foreclose her claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL"). Defendants have raised these defects throughout this litigation, yet despite five opportunities to amend, Plaintiff continues to replead the same jurisdictionally defective allegations while asserting the same New York statutory claims.

Finally, even if the Court reaches the substance of Plaintiff's claims, the 5AC still fails to state a claim under Title VII, the ADA, the NYSHRL, the NYCHRL, the NYLL, or the New Jersey Law Against Discrimination ("NJLAD"). Despite numerous opportunities to do so, Plaintiff fails to identify facts plausibly connecting any challenged employment action to her race, disability, or protected activity. She does not identify a comparator, a discriminatory decisionmaker, a disability that allegedly required accommodation, or a specific accommodation that was purportedly denied. Instead, Plaintiff relies on the same conclusory assertions of discrimination, retaliation, failure to accommodate, and hostile work environment that Defendants have challenged throughout this litigation. Indeed, Plaintiff's own allegations identify a legitimate, non-discriminatory explanation for the challenged actions: a lengthy history of documented performance concerns, including written warnings, probation, and a Performance Improvement Plan.

Accordingly, the 5AC should be dismissed with prejudice. Alternatively, if any claim

[3] Moreover, any EEOC charge based on those events would now be time-barred because the 300-day filing period has expired. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a).

survives, the case should be transferred to the United States District Court for the District of New Jersey, where Plaintiff alleges she resides and has primarily worked since 2018.

## II. STATEMENT OF RELEVANT ALLEGATIONS[4]

### A. Overview of Plaintiff's Employment.

On August 8, 2018, Liberty offered, and Plaintiff accepted, a position as a Data Analysis and Reporting Team ("DART") Pre-Underwriter. (5AC ¶ 38). Policastro was Plaintiff's supervisor. (5AC ¶ 39). On November 2, 2018, Plaintiff requested to work from home and her request was approved. (5AC ¶ 54). Following that meeting, Plaintiff worked from her home in New Jersey— with the exception of 11 days in 2018 and 2019 when she worked from the New York office. (5AC ¶ 55).

In February 2021, Caraballo became the supervisor of the DART Team and oversaw Plaintiff. (5AC ¶ 68). Plaintiff disagreed with this reporting structure and requested a change in supervisors and/or a transfer. (5AC ¶¶ 69–70). In response, Liberty informed Plaintiff that it would not remove Plaintiff from Caraballo's supervision or transfer her to another unit, and Plaintiff remained under Caraballo's supervision. (5AC ¶ 71).

### B. Plaintiff's Alleged Complaints of Discrimination.

Plaintiff's 5AC alleges a smattering of isolated instances that she characterizes as discrimination, harassment, retaliation, and hostile work environment. These allegations include: (1) a "segregation wall" allegedly erected near Plaintiff's workspace in 2017 (5AC ¶ 34); (2) unspecified complaints of discrimination and hostile work environment in June 2017 (5AC ¶ 35); (3) allegations that Caraballo questioned Plaintiff's competency beginning in 2018 (5AC ¶¶ 48-

[4] For purposes of this Motion only, Defendants assume, as required, that the well-pleaded factual allegations contained in the 5AC are true. Defendants expressly deny, however, that Plaintiff's allegations establish any violation of law and vehemently deny that Plaintiff's claims have any merit.

50); (4) allegations that Plaintiff was singled out regarding a work assignment in May 2020 (5AC ¶¶ 57-64); (5) Caraballo's alleged June 2020 comment concerning fried chicken during a discussion of Juneteenth (5AC ¶¶ 65-67); and (6) complaints of discrimination, harassment, hostile work environment, and retaliation allegedly made throughout 2021 and 2022. (5AC ¶¶ 149-158).

Plaintiff also alleges that Liberty discriminated against her when it denied her February 2021 request to be removed from Caraballo's supervision and transferred to another position. (5AC ¶¶ 70-71).

**C. Plaintiff's Complaints of Alleged Wage and Hour Violations.**

As it relates to Plaintiff's NYLL claims, Plaintiff asserts in her 5AC that she was issued a "One Time Final Warning" for working outside of her regularly scheduled hours. (5AC ¶ 136). She further alleges that she was only informed of this policy after she complained to Basset that she had been working overtime that she had not been paid for and after filing her May 6, 2021, complaint with the New York State Division of Human Rights. (5AC ¶¶ 137–141; 210–214).

**D. Plaintiff's 2022 Medical Leave.**

On January 31, 2022, Plaintiff received a written warning for performance deficiencies and was later placed on probation effective April 1, 2022. (5AC ¶¶ 120, 142-143). On or about April 6, 2022, Plaintiff left work and applied for short-term disability leave. (5AC ¶ 160). Plaintiff alleges that she thereafter sought reassignment to a position under different supervisors and remained on leave while Liberty evaluated potential placement opportunities. (5AC ¶¶ 161-182). Plaintiff further alleges that Liberty requested additional medical information during this process and that she communicated with McLaughlin regarding potential transfer opportunities and return-to-work options. (5AC ¶¶ 167-180). Ultimately, Plaintiff alleges that Liberty offered her an

Associate Account Analyst position on March 20, 2024, which she accepted. (5AC ¶ 183).[5]

### E. Plaintiff's Return to Work in March 2024.

Plaintiff alleges that, after an extended leave of absence, Liberty offered her a position as an Associate Account Analyst, which she accepted on March 20, 2024. (5AC ¶ 183).[6] Plaintiff further alleges that, following her return, she experienced issues relating to training, workload, supervision, accommodations, and performance expectations. (5AC ¶¶ 184-190). She also alleges that she received a Performance Improvement Plan on November 26, 2024. (5AC ¶ 188).

Plaintiff generally alleges that she complained about discrimination, retaliation, and Defendants' alleged failure to accommodate a disability following her return to work. (5AC ¶¶ 184-192). However, the 5AC does not identify the discriminatory conduct allegedly giving rise to those complaints, explain how any challenged action was connected to a protected characteristic, identify any specific conduct allegedly creating a hostile work environment, or identify any facts linking her eventual termination to discriminatory or retaliatory animus. (5AC ¶¶ 184-192).[7]

### F. Plaintiff's January 2025 Termination

Plaintiff alleges that "[o]n January 27, 2025, Plaintiff was terminated after complaining about continued discrimination, failure to accommodate a disability and continued retaliation." (5AC ¶ 2). Later in the 5AC, Plaintiff similarly alleges that "[o]n January 27, 2025, Defendant Liberty terminated Plaintiff." (5AC ¶ 191).

---

[5] Although Plaintiff repeatedly references a disability and identifies stress-related psychological and physical symptoms, the 5AC does not identify the specific disability at issue, explain the limitations arising from that condition, or clearly articulate any accommodation allegedly required beyond reassignment to a position under different supervisors. *See* 5AC ¶¶ 159-190

[6] After exhausting short-term disability benefits, Plaintiff transitioned to long-term disability status, which ended when she accepted her new role.

[7] Plaintiff does not identify the discriminatory conduct underlying her complaints, the protected characteristic allegedly implicated, the accommodation purportedly denied, or the nature of the alleged retaliation. (*See* 5AC ¶¶ 184-190). Nor does she identify any specific comments, incidents, or conduct allegedly creating a hostile work environment following her return to work. (*See* 5AC ¶¶ 184-190).

Plaintiff further alleges that Defendants "failed to train, failed to provide a reasonable accommodation, created a hostile work environment, refused to provide support, improperly disciplined and ultimately terminated Plaintiff in retaliation for her complaining about discrimination and retaliation." (5AC ¶ 192).[8]

## III. LEGAL ARGUMENT

### A. Plaintiff's Fifth Amended Complaint Continues to Violate Rule 8.

Federal Rule of Civil Procedure 8 requires a complaint to contain a "short and plain statement" showing entitlement to relief, and further requires that each allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). As this Court recognized in its December 20, 2024, Order (Dkt. No. 78), these requirements serve an important purpose: preventing litigants from forcing courts and opposing parties to sift through a "mass of verbiage" to identify potentially relevant allegations. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 32 (2d Cir. 2008). Where a complaint fails to comply with Rule 8, dismissal is appropriate. *Salahuddin*, 861 F.2d at 42.

This Court has already determined that Plaintiff's pleading violated Rule 8. In its December 20, 2024 Order, the Court dismissed Plaintiff's 3AC, finding that its "length alone is sufficient grounds" for dismissal because it was "neither short nor plain." (Dkt. No. 78 at 3-4). The Court also found that the 3AC was "confusing and difficult to comprehend" and imposed an "unjustified burden" on the Court and Defendants by forcing them to identify relevant allegations from a "mass of verbiage." (*Id*. at 4-5). The Court therefore dismissed the 3AC and granted Plaintiff leave to file a complaint "that complies with this Order." (*Id*. at 6).

---

[8] The 5AC does not identify the decisionmaker responsible for the alleged termination, the particular disability for which Plaintiff allegedly required accommodation, the accommodation allegedly denied, the specific discriminatory conduct allegedly prompting her complaints, or the particular retaliatory acts allegedly preceding her termination. (*See* 5AC ¶¶ 184-192).

After Plaintiff filed the Fourth Amended Complaint ("4AC"), Defendants again moved to dismiss on Rule 8 grounds and explained why Plaintiff failed to cure those deficiencies. (Dkt. No. 100). Thereafter and before ruling on Defendants motion, the Court granted Plaintiff leave to file a 5AC so that the operative pleading would contain "all potential claims the Plaintiff plans to pursue in this matter." (Dkt. No. 112). Thus, before filing the 5AC, Plaintiff had the benefit of both the Court's Rule 8 ruling and Defendants fully briefed Third Motion to Dismiss, yet the 5AC demonstrates that Plaintiff made no meaningful effort to cure the defects the Court previously identified.

Even a comparison of the 4AC and the 5AC reveals that Plaintiff largely ignored both the Court's Order and Defendants' prior Rule 8 arguments. Aside from a limited number of new allegations concerning Plaintiff's March 2024 return to work, alleged accommodation issues, a November 2024 Performance Improvement Plan, and her January 2025 termination, Plaintiff made no meaningful revisions to the pleading. The structure, organization, and pleading deficiencies identified by the Court and Defendants remain unchanged.

The continued deficiencies are readily apparent from the face of the pleading. While the Court previously noted that the length of Plaintiff's 3AC was itself sufficient grounds for dismissal, the 5AC remains a sprawling, repetitive, and confusing pleading consisting of approximately 67 pages and more than 400 numbered paragraphs, asserting 34 causes of action under numerous federal, New York, and New Jersey statutes. (*See* 5AC ¶¶ 1–418). The 5AC remains packed with unnecessary detail, argumentative characterizations, and lengthy factual narratives untethered to the legal elements of the causes of action asserted. Courts routinely dismiss complaints far shorter than Plaintiff's under Rule 8. *See Blakely v. Wells*, 209 F. App'x 18, 19 (2d Cir. 2006) (affirming dismissal of complaint spanning 57 pages and containing 597 paragraphs); *Owens v. State of N.Y. Attorney General*, 10 F. App'x 34, 35 (2d Cir. 2001) (affirming dismissal of 55-page complaint).

The organizational deficiencies identified in Defendants' prior motion likewise remain. The 5AC is neither chronological nor topically organized. For example, allegations concerning Caraballo's purported hostile work environment are immediately followed by allegations regarding Plaintiff's status as a "New York City Based Employee," before abruptly shifting back to discrimination and retaliation allegations. (5AC ¶¶ 48–69). Later, allegations spanning 2021 and 2022 concerning workload, performance issues, disciplinary actions, supervisory meetings, and discrimination complaints are presented in a disjointed and overlapping manner. (5AC ¶¶ 84–148). The pleading then shifts again to disability leave, transfer requests, Plaintiff's March 2024 return to work, and her alleged January 2025 termination. (5AC ¶¶ 167–192). As a result, the 5AC forces Defendants and the Court to piece together the chronology, legal theories, and relevant actors from scattered allegations spanning nearly a decade.

More tellingly, Plaintiff's response to the Court's Rule 8 ruling was not to reorganize or clarify her allegations in compliance with the Court's directive but merely to append a small set of new allegations concerning her March 2024 reemployment, a Performance Improvement Plan, and her alleged January 2025 termination. (5AC ¶¶ 184–192). Plaintiff makes no meaningful effort to connect these allegations to the preceding 183 paragraphs or explain how events occurring in a new role, under a different reporting structure, support the 34 causes of action asserted throughout the 5AC. Instead, Plaintiff simply dropped these allegations into an otherwise unchanged complaint and incorporated them wholesale into virtually every claim.

The 5AC also continues to incorporate virtually every factual allegation into each cause of action. (*See*, e.g., 5AC ¶ 253). As a result, each claim incorporates hundreds of allegations regardless of their relevance to the particular cause of action asserted. This is the same pleading defect previously identified by both Defendants and the Court.

Accordingly, the 5AC remains materially indistinguishable from the pleading previously

dismissed. Despite multiple opportunities to amend, Plaintiff still fails to identify which allegations support which claims, which Defendants allegedly engaged in specific conduct, or how her newly added allegations support her causes of action. (Dkt. Nos. 78, 112). Dismissal under Rule 8 therefore remains warranted.

**B. The Fifth Amended Complaint Should Be Dismissed Under Rule 12(b)(6).**

Even if the Complaint is not dismissed under Rule 8, most of the alleged causes of action fail to satisfy Rule 12's pleading standard. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations pleaded must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A district court must first review a complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). The Supreme Court has stated "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662 at 678; *see also Twombly*, 550 U.S. at 555. While facts must be accepted as alleged, the same is not true with respect to bald assertions, subjective characterizations, or legal conclusions. *See Iqbal*, 556 U.S. at 687 (reversing denial of motion to dismiss based on finding that, after conclusory allegations

were disregarded, the remaining allegations failed to plausibly establish a claim of discrimination).

As discussed below, Plaintiff's claims under Title VII, NYSHRL, NYCHRL, NYLL, and NJLAD fail to state a claim for relief and must be dismissed.

**1. Certain Claims Arising Before July 9, 2020 Are Time Barred And The Continuing Violations Doctrine is Inapplicable.**

Plaintiff already conceded that her EEOC charge was filed on May 5, 2021, and that the applicable Title VII limitations period begins on July 9, 2020. (Dkt. No. 106 at 8.) Accordingly, any Title VII claim predicated on conduct occurring before July 9, 2020, is time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Edwards v. N.Y. State Unified Court Sys.*, No. 12 Civ. 46 (WHP), 2012 WL 6101984, at *2-3 (S.D.N.Y. Nov. 20, 2012). Plaintiff therefore cannot rely on allegations concerning events occurring in 2017, 2018, or other pre-July 9, 2020, periods to support her Title VII claims.

Nor can Plaintiff salvage those allegations through the continuing violation doctrine. Under *Morgan*, discrete acts occurring outside the limitations period are independently time-barred and cannot be revived by characterizing them as part of an ongoing pattern. *See Morgan*, 536 U.S. at 114-15.

The 5AC attempts to link together a series of unrelated events spanning nearly a decade, including a purported "segregation wall" in 2017, allegations concerning Caraballo's comments regarding Plaintiff's competency in 2018, workplace incidents in 2020, and subsequent allegations involving transfer requests, disciplinary actions, medical leave, and other employment decisions occurring years later.. (*See* 5AC ¶¶ 34-192). These are precisely the type of discrete acts that *Morgan* holds must independently fall within the limitations period. *See, e.g., Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 WL 1922624, at *4-5 (S.D.N.Y. Apr. 21, 2020) (holding that alleged conduct that took place with significant gaps in time between incidents, and

involved different supervisors or co-workers, did not constitute a continuing violation).

Accordingly, Plaintiff cannot rely on the continuing-violation doctrine to revive conduct occurring before July 9, 2020, and her Title VII claims arising before that period are time barred.

### 2. Plaintiff Failed to Exhaust Her Title VII and ADA Claims.

Plaintiff's newly added allegations concerning her March 2024 rehire, alleged accommodation requests, November 2024 Performance Improvement Plan, and January 27, 2025, termination exceed the scope of her May 5, 2021, EEOC charge and were not administratively exhausted. (*See* 5AC ¶¶ 184-192). Nor can they be at this time as the 300-day time period to file an EEOC charge has long since expired. The 5AC identifies a Title VII right-to-sue letter issued in July 2022 and an ADA right-to-sue letter issued in February 2024,[9] but contains no allegation that Plaintiff filed a new EEOC charge concerning the events arising from her subsequent employment in March 2024 or her alleged termination in 2025. (5AC ¶¶ 9-10, 183-192).

It is well established that a plaintiff may pursue in federal court only those claims that were included in the underlying administrative charge or those claims that are reasonably related to the allegations presented to the EEOC. The "reasonably related" doctrine is a narrow exception and does not apply merely because later employment events involve the same employer or the same plaintiff. Rather, courts examine whether the later conduct is sufficiently connected to the conduct described in the administrative charge and whether it was carried out in substantially the same manner. *See Samimy v. Cornell Univ.*, 961 F. Supp. 489, 493 (W.D.N.Y. 1997); *Magnello v. TJX Cos., Inc.*, 556 F. Supp. 2d 114, 121 (D. Conn. 2008).

Courts routinely reject efforts to expand an EEOC charge to encompass later employment actions involving different events, positions, or decisionmakers. *See Samimy*, 961 F. Supp. at 493;

[9] Plaintiff filed her ADA Charge of Discrimination with the EEOC on August 29, 2023; accordingly, the applicable 300-day administrative filing period reaches back only to November 2, 2022.

*Magnello*, 556 F. Supp. 2d at 121. The same is true here. Plaintiff's May 5, 2021, EEOC charge necessarily preceded her departure from work in 2022, her period of disability leave, her efforts to obtain reassignment, her return to work in March 2024, her alleged workplace issues following that return. (*See* 5AC ¶¶ 167-192). Plaintiff's newly added allegations also concern a position that she did not even occupy when she filed her EEOC charge in 2021. According to the 5AC, Plaintiff returned to work on March 20, 2024, as an Associate Account Analyst. (5AC ¶ 183). The allegations concerning her training, workplace support, alleged accommodation requests, performance issues, and eventual termination all arise from that subsequent period of employment. (*See* 5AC ¶¶ 184-192). Nothing in the 5AC alleges that these events were presented to the EEOC or investigated as part of Plaintiff's earlier administrative proceedings. (*See* 5AC ¶¶ 9-10).

The same defect independently requires dismissal of Plaintiff's ADA claims to the extent they are premised upon the newly alleged 2024–2025 events. Plaintiff does not allege that she filed a new EEOC charge concerning any alleged failure to accommodate, any allegedly discriminatory conduct relating to a disability, or her January 2025 termination. Instead, she attempts to append entirely new ADA theories to litigation that is based upon administrative filings predating those events by several years.

Moreover, the 5AC does not even identify the disability underlying these newly asserted ADA claims. Plaintiff repeatedly alleges that Defendants failed to accommodate her "disability" or "medical conditions," but does not allege with specificity what disability allegedly required accommodation during her 2024 return to work. (*See* 5AC ¶¶ 184–192). Nor does Plaintiff clearly identify the accommodation that was supposedly requested and denied. Rather, Plaintiff merely recites the conclusion that Defendants "failed to provide a reasonable accommodation." (5AC ¶ 192). Such conclusory allegations make it impossible to determine whether the newly asserted ADA theories are related to, let alone exhausted through, any prior administrative filing. They

likewise fail to state a claim because "threadbare recitals of the elements of a cause of action" and "labels and conclusions" do not satisfy Rule 12. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff therefore cannot use the 5AC to transform this action into one involving entirely new employment events that allegedly occurred years after her EEOC charge. Because Plaintiff does not allege that she filed a new EEOC charge concerning her March 2024 reemployment, the alleged failure to accommodate, the November 2024 Performance Improvement Plan, or the January 27, 2025, termination, any Title VII or ADA claims predicated upon those events are unexhausted and should be dismissed. *See Samimy*, 961 F. Supp. at 493 ; *Magnello*, 556 F. Supp. 2d at 121.

### 3. Plaintiff's NYSHRL and NYCHRL Claims Fail for Lack of Jurisdiction.

Plaintiff's NYSHRL and NYCHRL claims (Counts Four through Sixteen) must be dismissed because Plaintiff cannot satisfy the required New York "impact" test. Under *Hoffman v. Parade Publs.*, a nonresident may invoke the protections of the NYSHRL or NYCHRL only if the alleged discriminatory conduct had an impact in New York. 15 N.Y.3d 285, 289-91 (2010); *accord Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012). The relevant inquiry is where the plaintiff lived and worked—not where the employer is headquartered or where employment decisions were allegedly made. *See Hoffman*, 15 N.Y.3d at 290-91; *Meilus v. Rest. Opportunities Ctr. United, Inc.*, No. 21-CV-2554 (CM), 2021 WL 4868557, at *10 (S.D.N.Y. Oct. 15, 2021).

Although Plaintiff alleges she was a "New York City Based Employee" and maintained a New York work address, she simultaneously alleges that she worked primarily from New Jersey beginning in November 2018. (5AC ¶¶ 31, 55-56). Her new allegations concerning her March 2024 reemployment and January 2025 termination do not change that analysis because she still

alleges that she lived and worked in New Jersey. (5AC ¶¶ 12, 55-56, 183-192).[10] Despite Defendants repeatedly raising this issue throughout this litigation and Plaintiff having five opportunities to amend her complaint, the 5AC simply repackages the same New York claims without curing the absence of a New York impact. (5AC ¶¶ 12, 55-56).

Even if Plaintiff could satisfy the impact requirement, the only allegations tied to the period when she physically worked in New York are independently time-barred. N.Y.C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502. Thus, Plaintiff's 2017 "segregation wall" allegation and her 2018 allegations concerning Caraballo cannot support her NYSHRL or NYCHRL claims. (5AC ¶¶ 34, 48-50). Nor do those allegations plausibly support an inference of discrimination. *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 12 (2d Cir. 2013). Accordingly, Counts Four through Sixteen should be dismissed.

**4. Plaintiff's NYLL Claims Fail as a Matter of Law.**

Plaintiff asserts four causes of action under the NYLL (Counts Twenty-Five through Twenty-Eight) for alleged unpaid wages, wage notice violations, wage statement violations, and retaliation. Like her NYSHRL and NYCHRL claims, Plaintiff's NYLL claims fail because she did not perform the relevant work in New York.

The NYLL does not apply extraterritorially. Courts routinely decline to extend NYLL protections to employees who perform their work outside New York.[11] As courts have repeatedly recognized, "the crucial issue is where the employee is 'laboring'." *O'Neil v. Mermaid Touring*

[10] Nor do Plaintiff's occasional visits to the New York office satisfy the impact requirement. Plaintiff alleges only eleven visits over a multi-year period. (5AC ¶ 57). Such infrequent travel is insufficient as a matter of law. *See Meilus*, 2021 WL 4868557, at *10; *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 183 (S.D.N.Y. 2023).

[11] *See, e.g.*, *Aminov v. EC Commodities Corp.*, No. 16-CV-4800 (AMD)(SMG), 2017 WL 9511075, at *3 (E.D.N.Y. July 6, 2017), *adopted report and recommendation*, 2018 WL 542245 (E.D.N.Y. Jan. 24, 2018) (dismissing NYLL claims where employee performed work outside New York); *Kim v. Family Bob Inc.*, No. 20-CV-906 (ENV), 2021 WL 7906544, at *5-6 (E.D.N.Y. Jan. 26, 2021) (same); *Warman v. Am. Nat'l Standards Inst.*, No. 15-CV-5486 (RA), 2016 WL 3676681, at *2 (S.D.N.Y. July 6, 2016) (same); *Magnuson v. Newman*, No. 10-CV-6211 (JMF), 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013) (same).

*Inc.*, 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013).

Plaintiff alleges that she began working remotely in November 2018 and thereafter worked "mostly from her home in New Jersey." (5AC ¶¶ 55-56). She further alleges that she remained a New Jersey resident throughout the relevant period. (5AC ¶ 12). The wage-and-hour allegations underlying her NYLL claims concern conduct allegedly occurring in 2021 and 2022, when Plaintiff admittedly worked from New Jersey. (5AC ¶¶ 136-141, 218-239).

As discussed *supra* with respect to Plaintiff's NYSHRL and NYCHRL claims, Plaintiff's allegations establish that she lived and worked primarily in New Jersey, both before and after her March 2024 return to work. (5AC ¶¶ 12, 55-56, 183-192). Accordingly, Plaintiff cannot satisfy the threshold requirement that the work underlying her NYLL claims be performed in New York.[12]

Again, despite these fatal deficiencies and repeated opportunities to cure such deficiencies, Plaintiff continues to assert the same New York wage-law claims while alleging that she worked primarily from New Jersey. Because Plaintiff's NYLL claims arise from work allegedly performed in New Jersey, Counts Twenty-Five through Twenty-Eight must be dismissed.

#### 5. Plaintiff's Race-Based Discrimination, Retaliation, and Hostile Work Environment Claims Still Fail.

As Defendants have repeatedly demonstrated throughout this litigation, Plaintiff's race-based discrimination, retaliation, and hostile work environment claims fail to state a claim upon which relief can be granted. The 5AC does not alter that conclusion.

Plaintiff's new allegations do not cure the pleading deficiencies identified in Defendants' prior motions to dismiss. Plaintiff still fails to plead non-conclusory facts plausibly connecting any challenged employment action to her race or protected activity. Nor does she allege facts sufficient

[12] Plaintiff's allegations regarding her tax-withholding status are immaterial. Regardless of how taxes were withheld, Plaintiff's own allegations establish that she performed the relevant work from New Jersey, which is the pertinent inquiry under the NYLL. *See O'Neil,* 968 F. Supp. 2d at 579; (5AC ¶¶ 239-250).

to support a plausible hostile work environment claim.

Assuming, *arguendo*, that Plaintiff may pursue claims based on these newly added allegations, her discrimination, retaliation, and hostile work environment claims still fail under Title VII and, to the extent applicable, the NYSHRL, the NYCHRL, and NJLAD.[13]

To state a claim for discrimination under Title VII, a plaintiff must allege facts showing that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). NJLAD discrimination claims are analyzed under the same *McDonnell Douglas* framework. *See Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447-50 (2005).[14]

Plaintiff's retaliation claims under Title VII and the NYSHRL are also governed by the *McDonnell Douglas* burden-shifting framework. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The elements of a *prima facie* case of retaliation under the NYCHRL are identical, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon v. Columbia Univ. Med. Ctr.*, No. 11–CV–8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (citation and internal quotation marks omitted).

To prove a claim of hostile work environment under Title VII, NYSHRL or NJLAD, a plaintiff "must show that the workplace was so severely permeated with discriminatory

[13] As discussed *supra*, Plaintiff's NYSHRL and NYCHRL claims fail as a matter of law because Plaintiff does not and cannot allege the requisite New York impact. *See Hoffman*, 15 N.Y.3d at 289-91. Therefore, Plaintiff's only potentially viable state-law discrimination claims arise under the NJLAD. Defendants discuss the NYSHRL and NYCHRL below solely for the sake of completeness and without conceding that either statute applies to Plaintiff's claims.

[14] Claims under the NYSHRL and NYCHRL likewise apply the *McDonnell Douglas* framework, although the NYCHRL additionally permits recovery under a mixed-motive analysis. *See Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 112 (1st Dep't 2012); *Wright v. White Plains Hosp. Med. Ctr.*, 237 A.D.3d 1143, 1145 (2d Dep't 2025).

intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).[15] That showing requires a plaintiff to identify incidents that are more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (citation omitted). A plaintiff's burden under the NYCHRL is somewhat lower: he or she need only put forward evidence of "unequal treatment based upon membership in a protected class." *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 57 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).

Even under the most plaintiff-friendly of these standards, the 5AC fails because Plaintiff does not plausibly allege discrimination, retaliation, or hostile work environment based on race.

**a) Plaintiff Fails to Plead Facts Giving Rise to Any Plausible Inference of Discrimination, Retaliation, or Hostile Work Environment Under Any Applicable Statute**

Although Plaintiff now alleges that she was terminated on January 27, 2025, the 5AC still fails to plausibly allege that any challenged employment action occurred because of her race. Plaintiff's principal new allegation is that Liberty terminated her employment following her March 2024 return to work. (5AC ¶¶ 183-192). However, the mere existence of an alleged adverse employment action does not satisfy the pleading requirements for a discrimination claim. Plaintiff must also plead facts supporting a plausible inference that the challenged action occurred because of her membership in a protected class. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiff does not identify any similarly situated employee outside her protected class who

[15] *See Lehmann v. Toys 'R' Us*, 626 A.2d 445, 452 (N.J. 1993) ("In construing the terms of the [NJ]LAD, this Court has frequently looked to federal precedent governing Title VII . . ..").

was treated more favorably. She identifies no race-based comments by any alleged decisionmaker and does not identify who made the termination decision. Nor does she allege any facts suggesting that race played any role in her alleged termination, discipline, performance-management process, or any other challenged employment action. Indeed, Plaintiff's newly added allegations underscore this deficiency. Although she now alleges adverse actions, including a Performance Improvement Plan and termination, she makes no attempt to connect those actions to her race or otherwise plead facts giving rise to an inference of discriminatory intent.

"Naked assertions" of discrimination unsupported by factual allegations establishing a causal link between the challenged conduct and Plaintiff's protected status are insufficient as a matter of law. *See Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 8 (2d Cir. 2021); *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018). The mere fact that Plaintiff belongs to a protected class and was later terminated does not establish discrimination. Plaintiff must allege facts connecting those events. *See Puris v. TikTok Inc.*, No. 24-CV-944 (DLC), 2025 WL 343905, at *9 (S.D.N.Y. Jan. 30, 2025) (dismissing discrimination claim where alleged evidence of bias was not plausibly connected to the challenged termination). She does not.

Indeed, Plaintiff's own pleading undermines any inference of discrimination. The 5AC alleges that Defendants documented performance concerns for years, issued written warnings, placed Plaintiff on probation, and ultimately issued a Performance Improvement Plan shortly before her alleged termination. (*See* 5AC ¶¶ 125-145, 188). These allegations provide an obvious, non-discriminatory explanation for the challenged employment actions and undermine, rather than support any inference that Plaintiff's alleged termination occurred because of her race. Mere disagreement with an employer's performance assessments is not evidence of discrimination. *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 109 (E.D.N.Y. 2011).

Apart from her newly added termination allegations, Plaintiff's Complaint consists largely

of allegations concerning criticism of her work, written warnings, performance evaluations, probation, increased supervision, transfer requests, and workplace disagreements. Those allegations do not establish discrimination. Courts have repeatedly held that "not everything that makes an employee unhappy is an actionable adverse action." *Alexander*, 829 F. Supp. 2d at 109 (quoting *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002)). Likewise, "[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action." *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 642 (W.D.N.Y. 2014) (quoting *Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 214 (E.D.N.Y. 2014)). Nor is "[a] negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss," an adverse employment action. *Brown v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005).

Similarly, Plaintiff's dissatisfaction with reporting to Caraballo and her requests for transfer do not establish discrimination under Title VII. *See Pimentel v. City of N.Y.*, No. 00 Civ. 326 (SAS), 2002 WL 977535, at *4 (S.D.N.Y. 2002) ("[A] transfer, or denial of a transfer, to a more or less convenient location does not, by itself, constitute an adverse employment action."), *aff'd*, 74 F. Appx. 146 (2d Cir. 2003); *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 480 (S.D.N.Y. 2013).

The same result follows under the NYSHRL and NJLAD. Both statutes require factual allegations supporting a plausible inference that the challenged employment action was motivated by discriminatory animus. *See supra* at Section 5. And while the NYCHRL is construed more liberally than Title VII, the NYSHRL, and the NJLAD, Plaintiff must still allege non-conclusory facts showing that she was treated less well because of her race. *See Cruz v. SEIU Loc. 32BJ*, No. 19 Civ. 11836 (LGS), 2021 WL 3604661, at *6 (S.D.N.Y. Aug. 12, 2021) (dismissing NYSHRL and NYCHRL claims where factual allegations were too general and conclusory and did not

identify specific comparators or detail instances of discrimination). Plaintiff's allegations consist almost entirely of conclusory assertions that Defendants discriminated against her, unsupported by factual allegations connecting the challenged conduct to her race or any other alleged protected characteristics. Even under the most liberal statutory framework applicable here, such allegations are insufficient to support a plausible claim of discrimination, retaliation, or hostile work environment. Accordingly, Plaintiff's claims under Title VII, the NYSHRL, the NYCHRL, and the NJLAD should be dismissed.

Plaintiff's retaliation claims also fail because the 5AC does not plausibly allege a causal connection between any protected activity and the challenged employment actions. Courts routinely hold that temporal proximity supports an inference of causation only where the challenged action closely follows the protected activity. Even gaps of several months may be insufficient. *See Graham v. Macy's, Inc.*, No. 14-CV-3192 (PAE), 2016 U.S. Dist. LEXIS 10269, at *28 (S.D.N.Y. Jan. 28, 2016), *aff'd*, 2017 U.S. App. LEXIS 1687 (2d. Cir. Jan. 31, 2017); *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007). Here, Plaintiff, does not even attempt to connect complaints made in 2021 and 2022 to a termination that allegedly occurred in 2025, after disability leave, reassignment, a return to work, and an entirely new phase of employment. Apart from conclusory assertions that Defendants retaliated against her, Plaintiff alleges no facts permitting a reasonable inference that any protected activity caused any challenged employment action. Accordingly, her retaliation claims fail under Title VII, the NYSHRL, the NYCHRL, and the NJLAD.

Plaintiff's hostile work environment claims likewise fail. To state a hostile work environment claim under Title VII, the NYSHRL, or the NJLAD, Plaintiff must allege facts showing that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the terms and conditions of employment. *Patane v. Clark*,

508 F.3d 106, 113 (2d Cir. 2007); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). Even under the NYCHRL's more liberal standard, Plaintiff must still allege facts plausibly showing that she was treated less well because of her membership in a protected class. *Cruz*, 2021 WL 3604661, at *6. Courts routinely reject hostile work environment claims premised upon workplace disagreements, personality conflicts, criticism, supervision, disciplinary actions, and performance-related disputes. *See Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 CV 7584 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012); *Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, No. 16 CV 1101 (RRM)(CLP), 2018 WL 4055278, at *12 (E.D.N.Y. July 6, 2018).

In support of her hostile work environment theories, Plaintiff alleges that a wall was placed near her workspace, a co-worker spread rumors about her scent, Caraballo questioned her competency, she was criticized regarding her work, Policastro reprimanded her, and Caraballo allegedly made a comment about fried chicken during a discussion concerning Juneteenth. (*See* 5AC ¶¶ 34, 48-49, 59-67). Even accepting those allegations as true, Plaintiff does not plausibly allege a workplace permeated with discriminatory intimidation, ridicule, and insult. Instead, Plaintiff merely assumes discriminatory motive.[16] Most of the alleged incidents involve workplace

[16] Plaintiff's NJLAD aiding-and-abetting claim against Caraballo and Policastro likewise should be dismissed. Even after filing a 5AC, Plaintiff still fails to plead facts showing that either Defendant engaged in the type of active and purposeful conduct required to impose individual liability under the NJLAD. Rather, the 5AC continues to allege, at most, that certain supervisors failed to adequately investigate, address, or respond to Plaintiff's complaints of discrimination, harassment, retaliation, and hostile work environment. Such allegations are insufficient as a matter of law. *See Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 595 (2008) (holding that an individual defendant's alleged failure to act or failure to "effectively respond" to complaints of discrimination falls "well short of the 'active and purposeful conduct'" required for aiding-and-abetting liability under the NJLAD); *Cowher v. Carson & Roberts*, 425 N.J. Super. 285, 303-304 (App. Div. 2012) (affirming dismissal where, at most, the supervisor failed to adequately address conduct brought to his attention); *Collins v. James W. Turner Constr., Ltd.*, No. 16-2877(FLW)(LHG), 2017 WL 210236, at *9-10 (D.N.J. Jan. 18, 2017) (holding that allegations that a defendant failed to act to protect plaintiff or failed to effectively respond to complaints do not constitute the active and purposeful conduct necessary for individual aiding-and-abetting liability). To the extent Plaintiff attempts to base her claim on the same allegations underlying her discrimination, retaliation, or hostile work environment claims, that claim also fails because the 5AC does not plausibly allege any underlying NJLAD violation. Accordingly, her aiding-and-abetting claim should be dismissed.

disagreements, criticism, supervision, or personality conflicts that are not tied to race. As for the alleged fried-chicken comment, Plaintiff identifies only a single isolated remark occurring in June 2020, which, standing alone, is insufficient to establish a hostile work environment, particularly where the 5AC contains no factual allegations linking the remainder of the complained-of conduct to Plaintiff's race or protected activity. *See Alfano*, 294 F.3d at 379; *Davis-Molinia*, 2011 WL 4000997, at *11 (dismissing race-based hostile work environment claim where allegations reflected "personal enmity or personality conflicts," including disapproving looks, denial of time off, rude comments, yelling, reassigned duties, belittling remarks, and cliquish behavior)''; *Harrison*, 2018 WL 4055278, at *12 (collecting cases holding that unpleasant workplace interactions, even when accompanied by sporadic race-based comments, do not establish a hostile work environment).

Accordingly, Plaintiff fails to allege facts showing either severe or pervasive discriminatory conduct or that she was treated less well because of her race. Her hostile work environment claims therefore fail under Title VII, the NYSHRL, the NYCHRL, and the NJLAD.

### 6. Plaintiff Cannot Establish a Prima Facie Case of Discrimination or Retaliation Under the ADA.

Even if the Court were to consider Plaintiff's newly added allegations concerning her March 2024 return to work, alleged accommodation requests, November 2024 Performance Improvement Plan, and January 27, 2025, termination, despite that they were not administratively exhausted (*see supra* at B(2)), Plaintiff still fails to state an ADA claim under Rule 12. *See Davis v. N.Y.C. Dept. of Educ.*, 804 F. 3d 231, 235 (2d Cir. 2015).

Critically, Plaintiff does not identify the disability allegedly underlying her claims.[17]

[17] For purposes of this Motion only, Defendants will assume that Plaintiff meets the statutory definition of "qualified individual with a disability."

Although she repeatedly references a "disability," "medical conditions," and a purported need for accommodation, she never clearly identifies the disability at issue. (*See* 5AC ¶¶ 184-192). Plaintiff appears to allege that she requested reassignment to a position under different supervisors as an accommodation. (*See* 5AC ¶¶ 162-180). However, Plaintiff alleges that Defendants ultimately offered her an Associate Account Analyst position, which she accepted. (5AC ¶ 183). To the extent reassignment was the accommodation Plaintiff sought, her own allegations establish that it was provided. The 5AC does not identify any other accommodation that Plaintiff requested and Defendants denied. Instead, Plaintiff merely alleges, in conclusory fashion, that Defendants "failed to provide a reasonable accommodation." (5AC ¶ 192). Such allegations are insufficient under *Twombly* and *Iqbal*.

Plaintiff also fails to plausibly allege a denial of a reasonable accommodation. Her own allegations acknowledge that Defendants engaged in an extended return-to-work process, communicated with her regarding available opportunities, and ultimately offered her a position as an Associate Account Analyst, which she accepted in March 2024. (*See* 5AC ¶¶ 169-183). Indeed, Plaintiff's allegations suggest that Defendants ultimately provided the very accommodation she sought: reassignment to a different position under a different supervisory structure.

Nor is an employer required to provide an employee's preferred accommodation, create a new position, or immediately transfer an employee to a position of her choosing. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999).[18] At most, Plaintiff alleges dissatisfaction with the timing and adequacy of Defendants' efforts, which does not establish a failure to accommodate.

[18] The EEOC recognizes that an employer's obligation is to provide a reasonable accommodation—not a perfect one—and that reassignment is not required where it would impose an undue hardship. *See* EEOC, *Facts About the Americans with Disabilities Act*, available at http://www1.eeoc.gov/eeoc/publications/fs-ada.cfm?renderforprint=1.

Plaintiff also fails to plausibly allege that any challenged employment action occurred because of a disability. The 5AC contains no allegations of disability-based comments, discriminatory statements, disparate treatment, or any facts suggesting that disability played a role in the November 2024 Performance Improvement Plan or the January 2025 termination. Instead, Plaintiff merely concludes that Defendants discriminated against her because of a disability.

Plaintiff's own allegations point to a non-discriminatory explanation for the challenged actions. The 5AC alleges a lengthy history of documented performance concerns, including written warnings, probation, and a Performance Improvement Plan preceding her termination. (*See* 5AC ¶¶ 125-145, 188-191). Plaintiff's disagreement with those assessments does not plausibly suggest disability discrimination.

Plaintiff's ADA retaliation claim fares no better. To state such a claim, Plaintiff must plausibly allege protected activity, employer awareness, a materially adverse action, and a causal connection between the two. *See McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 378 (S.D.N.Y. 2007), *aff'd*, 326 F. App'x 68 (2d Cir. 2009). Yet Plaintiff does not identify when she allegedly requested an accommodation, who received the request, or facts showing that any decisionmaker involved in the alleged January 2025 termination acted because of that request. Instead, she offers only conclusory assertions of retaliation.

Accordingly, Plaintiff fails to state a claim for disability discrimination, failure to accommodate, or retaliation under the ADA, and the Thirty-Third and Thirty-Fourth Causes of Action should be dismissed.

#### 7. The Court Should Deny Plaintiff the Opportunity to Amend Her Complaint.

Dismissal with prejudice is warranted because further amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Despite five prior amendments and guidance

from this Court (Dkt. No. 78), Plaintiff continues to assert the same deficient claims. Because those claims are barred by jurisdictional, timeliness, exhaustion, and pleading defects that cannot be cured through further amendment, Plaintiff should not be granted leave to file a seventh complaint. Accordingly, the 5AC should be dismissed with prejudice.

#### 8. Alternatively, the Court Should Transfer Any Remaining Claims to the District of New Jersey

If the Court declines to dismiss the 5AC in its entirety, it should transfer any remaining claims to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Transfer is appropriate where it serves "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). Plaintiff alleges that she resides in New Jersey and has worked primarily from her New Jersey home since November 2018. (5AC ¶¶ 12, 55-56). The operative facts underlying her remaining claims likewise arise predominantly in New Jersey, including her alleged complaints of discrimination, accommodation requests, leave of absence, reassignment, wage-and-hour allegations, and termination. (5AC ¶¶ 55-56, 160-252). Because a substantial part of the events giving rise to Plaintiff's claims occurred in New Jersey, the District of New Jersey is a proper transferee forum. *See* 28 U.S.C. § 1391(b)(2). New Jersey also has a strong interest in adjudicating claims brought by a New Jersey employee who primarily worked there. *See Hoffman,'* 15 N.Y.3d at 289-91; *Garcia v. Pearson Educ., Inc.*, No. 15 Civ. 7289 (KPF), 2016 WL 5921083, at *6-7 (S.D.N.Y. Oct. 7, 2016).

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss Plaintiff's Complaint *with prejudice*.

Dated: August 6, 2026
New York, New York

LITTLER MENDELSON, P.C.

By: ______________________________

William J. Anthony
H. Keith Belfield
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
wanthony@littler.com
kbelfield@littler.com

*Attorneys for Defendants Liberty Mutual Group Inc., Michael Policastro, Jose Caraballo, and Brendan McLaughlin*