**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PATRICIA GATLING-BROOKS
Plaintiff,

- against –

LIBERTY MUTUAL INSURANCE CO., LIBERTY MUTUAL GROUP, INC., IRONSHORE MANAGEMENT, INC., IRONSHORE INSURANCE SERVICES LLC, MICHAEL POLICASTRO, JOSE CARABALLO, BRENDAN McLAUGHLIN, JOHN DOE #1 and #2, and JANE ROE #1 and #2,
Defendants.

**Case No. 1: 22-CV-08979 (ALC) (KHP)**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' FOURTH MOTION TO DISMISS AND MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY.**

The Law Offices of Delmas A. Costin, Jr., P.C.
Delmas A. Costin, Jr.
930 Grand Concourse, Suite 1B
Bronx, NY 10451
(718) 618-0589 (O)
(347) 510-0099 (F)
dacostin@dacostinlaw.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 1

A. Brooks Experienced a Hostile Work Environment with Ironshore ..... 2

B. Defendants Discriminated and Retaliated Against Brooks ..... 2

C. Brooks Complained About Discrimination ..... 4

D. Defendants Failed to Pay Brooks Her Regular Wages and Overtime ..... 5

E. Defendants Retaliated Against Brooks Due to a Disability and Failed to Allow Her to Return to Work After Medical Leave ..... 5

III. ARGUMENT ..... 6

A. The Fourth Amended Complaint Complies with Rule 8 ..... 6

B. New York Law Applies to This Case ..... 8

1. Defendants Waived All Arguments Regarding Venue and Consent to Follow New York Law ..... 8
2. Brooks Properly Chose to Bring Her Case in The Southern District of New York. ..... 8
3. New York State Law Applies Due to the Impact of Discrimination ..... 11
4. New York State Law Applies– The State Of New York Has an Interestin Taxes ..... 15

C. Plaintiff's Claims Survive a Motion to Dismiss 12(B)(6) ..... 16

1. Brooks' Race and Color Discrimination Claim Should Not be Dismissed ..... 17
2. Brooks' Hostile Work Environment ClaimShould NotBe Dismissed ..... 19

D. Brooks' Disability and Failure to Accommodate Claims Should Not Be Dismissed ..... 22

E. Brooks Retaliation Claims Should Not Be Dismissed ..... 24

F. Brooks NJLAD Claims Should Not Be Dismissed ..... 25

IV. CONCLUSION ..... 26

## TABLE OF AUTHORITIES

**Cases**

*Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir. 2002) ............................................................20
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..........................................................................16
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ...................................................16
*Boykin v. KeyCorp*, 521 F.3d 202, 214-16 (2d Cir. 2008) ..........................................................6
*Buon v. Spindler*, 65 F.4th 64, 84 (2d Cir. 2023)......................................................................17
*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006)) ..........................24
*Byas v. Yonkers Pub. Sch*., No. 23-CV-8437 (KMK), 2025 U.S. Dist. LEXIS 63655, at *4 n.1 (S.D.N.Y. Mar. 31, 2025)..........................................................................................................7
*Churchill v Gallman*, 38 A.D.2d 631, (3d Dep't 1971) ..............................................................15
*Cruz v. Beto*, 405 U.S. 319, 322 (1972) .....................................................................................16
*D.H. Blair & Co. v Gottdiener*, 462 F3d 95, 107 [2d Cir 2006])............................................10, 9
*Davis v. N.Y.C. Dep't of Educ.*, No. 10-cv-3812 (KAM)(LB), 2014 U.S. Dist. LEXIS 30784, at *20 (E.D.N.Y. Mar. 7, 2014)..................................................................................................18
*Domb v. Metro. Life Ins. Co.*, 2003 U.S. Dist. LEXIS 13790, at *31 (S.D.N.Y. July 30, 2003) ....25
*Dow Jones & Co., Inc. v. Board of Trade Of City of Chicago,* 539 F. Supp. 190, 192 (S.D.N.Y. 1982)..........................................................................................................................................11
*Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)..........................................................21
*Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) ............................................................9
*Global Crossing, Ltd. Sec. Litig.*, 313 F Supp 2d 189, 212 [S.D.N.Y. 2003]). ...............................6
*Goggins v Alliance Capital Mgt., L.P.*, 279 F Supp 2d 228, 232 [S.D.N.Y. 2003])..........................9
*Gonzalez v Hasty*, 802 F3d 212, 220 [2d Cir 2015]) ....................................................................21
*Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) .......................................................19
*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 127 (2d Cir. 2019)..........................................................................................................................................23
*Harris v. Forklift Sys*., 510 U.S. 17, 21 (1993)...........................................................................19
*Hastings v. DOJ, 223 F. Supp. 2d 196,* 2002 U.S. Dist. LEXIS 18404 (D.D.C. 2002) ................7, 8
*Heiser v. United Air Lines, Inc.*, 167 F. Supp. 237, 1958 U.S. Dist. LEXIS 3408 (D.N.Y. 1958)..10
*Henvill v. Metro. Transp. Auth.*, 600 F. App'x 38, 39 (2d Cir. 2015)............................................18
*Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 65 (E.D.N.Y. 2002).....................................18
*Hoffmann v. Parade Pbls.*, 15 N.Y.3D 285, 289-291 (2010) ........................................................12
*Hodgson v. City of New York*, 2013 U.S. Dist. LEXIS 31709, 14-16 (S.D.N.Y. Mar. 7, 2013). ....20
*In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990).........................................9
*J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ............................................................9
*Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). ...................................................................17
*Littlejohn v. City of New York*, 795 F.3d 297,311, 316. (2d 2015) ................................................24
*Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). ........................9
*Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) ...............................................9
*Massaro v Bd. of Educ.*, 774 F App'x 18, 22 [2d Cir 2019]............................................................24
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...........................................................16
*Millea v. Metro-North R.R.*, 658 F.3d 154, 165 (2d Cir. 2011) ......................................................18
*Muldrow v. City of St. Louis*, 601 U.S. 346, 359, 144 S. Ct. 967, 977 (2024)................................17
*Murillo-Roman v. Pension Bds*., No. 1:22-cv-08365 (JLR), 2024 U.S. Dist. LEXIS 12128, at *13 (S.D.N.Y. Jan. 23, 2024) ...............................................................................................................7
*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002) ....................................21
*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). ................9

*Noll v International Business Machines Corp.*, 787 F3d 89, 94 (2d Cir 2015). ............................23
*Piper Aircraft Co. v Reyno*, 454 US 235, 255 [1981]).........................................................................9
*Rhodes v. Barnett*, 117 F. Supp. 312, 1954 A.M.C. 272, 1953 U.S. Dist. LEXIS 4256 (D.N.Y. 1953)...........................................................................................................................10
*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 23-24 (2d Cir. 2012) ..................20
*Roddey v. KPMG L.L.P.*, No. 22-CV-7405 (VSB), 2025 U.S. Dist. LEXIS 70708, at *25 (S.D.N.Y. Apr. 14, 2025) ..........................................................................................14
*Salahuddin v Cuomo*, 861 F2d 40, 42 [2d Cir 1988] .........................................................................6
*Shaughnessy v. Scotiabank*, 2024 U.S. Dist. LEXIS 57840 at *20-22 (S.D.N.Y. March 29, 2024) .......................................................................................................................................13
*Shiber v. Centerview Partners LLC*, 2024 U.S. Dist. LEXIS 116832, at *1 (S.D.N.Y. July 2, 2024) .......................................................................................................................................14
*Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536, 543-544....................................20
*Speno v Gallman*, 35 N.Y.2d 256, (1974). N.Y. LEXIS 1293 (N.Y. 1974) ..................................15
*Starr Indem. & Liab. Co. v Brightstar Corp.*, 324 F Supp 3d 421, 433 [S.D.N.Y. 2018])................9
*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).......9
*Taylor v. Metzger*, 152 N.J. 490, 706 A.2d 685, 688-89 (N.J. 1998) ..............................................26
*Wexelberg v Project Brokers LLC*, 2014 US Dist LEXIS 84400 ..................................................13

**Statutes**

§1404(a) ..............................................................................................................................................9
28 U.S.C. § 1404(a) ..............................................................................................................................9
28 USCS §1404...................................................................................................................................10
29 U.S.C. § 626(d) ..............................................................................................................................17
42 U.S.C. § 2000e-5(e) .......................................................................................................................17

**Rules**

Rule 12(b)(6).......................................................................................................................................16
Rule 8 ...............................................................................................................................................7, 8
Rule 8 (d)(1)..........................................................................................................................................6
Rule 8 (a)...............................................................................................................................................6

## I. PRELIMINARY STATEMENT

Plaintiff respectfully submits this opposition to Defendants' instant motion to partially dismiss the complaint and change the venue. Patricia Brooks is a New York based employee, who was forced to endure discrimination, a hostile work environment, and retaliation due to her race, color and disability. Additionally, Defendants willfully failed to pay her for all hours worked.

The complaint details numerous discriminatory practices and acts committed by co-workers and supervisors, condoned by her managers and consistently ignored by management despite her repeated documented cries for help and relief from an intolerable discriminatory work environment. Defendants and their employees' actions caused Brooks to develop anxiety and stress, which required Brooks to take a medical leave of absence from work. Defendants refused to take steps that should have allowed her to quickly return to work at the conclusion of her medical leave. Ultimately, Defendants placed Brooks in a work environment that resulted in her termination. Finally, Defendants intentionally failed to pay for all hours worked, including overtime. Brooks requests oral argument.

## II. FACTUAL BACKGROUND

Brooks identifies as and is an African-American woman. 5AC at 30. Ironshore Management, Inc. and Ironshore Insurance Services, LLC (collectively "Ironshore") hired Brooks, in 2014. 5AC at 32. Caraballo was a co-worker at Ironshore. 5AC at 34. In or about 2017, Ironshore became a subsidiary of Liberty. 5AC at 29. On or about August 8, 2018, Liberty hired Plaintiff to work as a Data Analysis Rating Team ("DART") Pre-Underwriter. 5AC at 38. Policastro became her manager. 5AC at 39. Caraballo became Brooks supervisor in 2021. 5AC at 68.

**A. Brooks Experienced a Hostile Work Environment with Ironshore**

Throughout her employment, Brooks experienced constant harassment and discrimination by coworkers including her primary tormentor Caraballo. For example, a coworker started a rumor that Brooks smelled bad (5AC at 34) and that Brooks did not do her job. 5AC at 34. In 2017, a supervisor falsely accused Brooks of falsifying her time records. 5AC at 34. Further, during this time period on or about April 6, 2017, Ironshore built a Segregation Wall in Brooks' work area, which isolated her from her coworkers. 5AC 34. A number of co-workers, including Caraballo, went to the Wall and laughed at her. 5AC at 34.

In 2018, Caraballo and Brooks worked together as members of the DART Team. 5AC at 39. Caraballo publicly made derogatory statements heard by her coworkers about plaintiff questioning her ability to do her work and her general competence. 5AC at 48-49. By September 2018, Brooks complained to Policastro about Caraballo's statements; however, Policastro did nothing. 5AC at 5. On June 15, 2020, Caraballo stated, “Hmmm, maybe I should get some friend (sic) chicken to celebrate!” when expressing his thoughts about Juneteenth Day. 5AC at 65. Policastro’s failed to take any action after Brooks complained. 5AC at 67.

Policastro assigned Brooks to report to Caraballo as her newly promoted supervisor. 5AC at 68. Brooks asked that she not report to Caraballo since she had that he discriminated against her for years. 5AC at 69. Policastro denied Brooks’ request. 5AC at 69. On February 17, 2021, Brooks formally complained about Caraballo with human resources and requested to be assigned a new supervisor or to transfer out of the DART Team. 5AC at 70. On May 7, 2021, human resources denied her requests. 5AC at 71.

**B. Defendants Discriminated and Retaliated Against Brooks**

On June 2, 2021, Caraballo accused Brooks of not doing her work in a timely manner. 5AC at 74-75. Brooks provided Caraballo information to refute his accusations. 5AC at 76.

On July 27, 2021, Caraballo assigned all multinational accounts to Brooks. 5AC at 86. Multinational accounts are the most complicated types of accounts, take the longest, and have the greatest chances of having problems and delays. 5AC at 87. Brooks was isolated and interacted less with her DART coworkers since she no longer did the same type of work. 5AC at 88.

In August 2021, an underwriter named Susan Klein complained that Brooks was not doing her job. 5AC at 78. On September 3, 2021, Jessica So, Policastro's manager accused Brooks of improperly directing the work of an underwriter by sending an e-mail that he performed specific work and threatened termination. 5AC at 79-80. Brooks provided information indicating that she had not sent an e-mail at all. 5AC at 81. Caraballo used this false allegation as a basis for giving Brooksa negative evaluation.5AC at 83. On or about October 20, 2021, plaintiff sent a routine e-mail requesting a "loss run." 5AC at 89. On January 31, 2022, Plaintiff was written up for making that request even though it was routine. 5AC at 91.Other members of the DART Team were not written up or disciplined for doing what Brooks had done. 5AC at 91.

In or around November 2021, Caraballo started to meet with Brooks weekly. 5AC at 92. On December 14th, 2021, in e-mails he identified 14 alleged problems with Brooks' work. 5AC at 95-96. On January 4, 2022, Caraballo accused her of improperly managing 5 multinational accounts. 5AC at 98. In all of these encounters, Caraballo refused to provide any documentation to support his accusations, while Brooks provided documentation that objectively showed she properly performed her job. 5AC at 100-101. Additionally, DART team members worked in the same manner as Brooks, but only she was disciplined. 5AC at 102.

On January 28, 2022, Caraballo issued Brooks a negative performance review. 5AC at 104-106. Caraballo failed to provide any documentation that supported the review. 5AC at 114-115. Eventually, Brooks provided documentation that showed she had properly performed her job. 5AC at 116.

On January 31, 2022, Caraballo issued the first written warning to Brooks. 5AC at 120. On February 7, 2022, Caraballo emailed Brooks 12 alleged problems with her work. 5AC at 132. On February 24, 2022, he emailed Brooks about 8 alleged problems with her work. 5AC at 133. On March 11, 2022 Caraballo sent an e-mail identifying additional problems with Brooks work. 5AC at 134. On March 23, 2022, Defendants issued Brooks with a one-time final warning for allegedly working outside of her scheduled hours. 5AC at 136. On April 1, 2022, Caraballo placed Brooks on probation, which is one step away from termination. 5AC at 142. Brooks provided documentation that refuted Caraballo's allegations. 5AC at 129, 147. Defendants failed to respond to Brooks' documentation. 5AC 130. Only Brooks was disciplined for acts that members of the DART Team routinely engaged in. 5AC at 86, 105, 121, 131, 216, 229-231 (working an extra hours). Prior to Caraballo's becoming her supervisor, Brooks had not been written up or disciplined. 5AC at 61, 108.

### C. Brooks Complained About Discrimination

Brooks repeatedly complained about discrimination and retaliation to some or all of the Defendants. In June 2017 she complained to management about discrimination and harassment. 5AC at 35. In September 2018 Brooks complained to Policastro about Caraballo's discriminatory behavior. 5AC at 50. On February 17, 2021, Brooks again complained about Caraballo and asked not to be placed under his supervision and requested a transfer. 5AC at 70. On October 26, 2021, Brooks contacted the Compliance Department to discuss the discrimination she experienced. 5AC at 150. On January 7, 2022 Brooks e-mailed Caraballo and Policastro stating that she was a victim

of discrimination and retaliation. 5AC at 153. On January 14, 2022 Brooks e-mailed human resources about discrimination and misrepresentation of her work. 5AC at 154. On January 20, 2022 Brooks e-mailed Caraballo and Policastro about discrimination and harassment. 5AC at 155. On March 23, 2022 Brooks e-mailed Caraballo, Policastro and a number of human resources managers saying she was a victim of discrimination, harassment, and retaliation.5AC at 156. On April 6, 2022, plaintiff again renewed her request to be transferred away from the DART team. 5AC at 157.

**D. Defendants Failed to Pay Brooks Her Regular Wages and Overtime**

Brooks worked from 7:00 AM to 4:30 PM Monday through Friday. 5AC at 196. Brooks worked up to four hours after work each weekday and up to four hours each weekend day. 5AC at 199-200. Brooks was only paid for 37.5 hours per week. 5AC at 198. Brooks requested payment for all hours worked and overtime hours.5AC at 218. Brooks requested data regarding when she logged in and out of the computer to determine the hours she worked. 5AC at 222-224. Liberty refused to provide her with information about the hours she worked and refused to pay Brooks any overtime hours. 5AC at 225.

**E. Defendants Retaliated Against Brooks Due to a Disability and Failed to Allow Her to Return to Work After Medical Leave**

On April 6, 2022, Brooks took medical disability leave due to stress. 5AC at 160-161. Brooks gave Liberty a note from her doctor which described Brooks' symptoms and requested the reasonable accommodation of not working with Policastro or Carabello. 5AC at 161-164. Brook Decl. Ex.B. On July 22, 2022, Brooks was able to return to work. 5AC at 165. McLaughlin initially stated it would take him a few weeks to place her in a position. 5AC 166. McLaughlin failed to follow up on Brooks' leads or to place. 5AC at 169-183 Finally, on March 20, 2024, Brooks was placed in a new position.5AC 183. Liberty failed to properly train and support Brooks.

5AC 191. On January 27, 2025, Brooks was terminated six days after the 5AC had been filed. 5AC 191.

## III. ARGUMENT

### A. The Fourth Amended Complaint Complies with Rule 8

The 5AC complies with Rule 8 which states "Each allegation must be simple, concise, and direct. No technical form is required." Rule 8 (d)(1). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." *Salahuddin v Cuomo*, 861 F2d 40, 42 [2d Cir 1988] (internal citations omitted). Complaints must provide Defendants with "fair notice" of the claims the grounds upon which they rest. If the complaint gives Defendants "fair notice of [the plaintiff's] claim and the grounds upon which it rests," and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," then the complaint satisfies the strictures of Rule 8(a). *Boykin v. KeyCorp*, 521 F.3d 202, 214-16 (2d Cir. 2008); "The fundamental command of the Federal Rules of Civil Procedure is never to exalt form over substance." *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006). Further, "[a] motion to dismiss is a vehicle for testing the legal sufficiency of plaintiffs' claims, and not a device for editing their prose." *In re Global Crossing, Ltd. Sec. Litig.*, 313 F Supp 2d 189, 212 [S.D.N.Y. 2003]). There is jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities." *Salahuddin*, 861 F.2d at 42; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

The 5AC complies with Rule 8 as "it is not the incomprehensible "labyrinthian prolixity of unrelated and vituperative charges" that Rule 8 was intended to curb." *Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (internal citations removed). The 5AC groups the allegations under three broad theories: (1) discrimination and retaliation based on race and color are contained in pages 5-28, (2) discrimination and retaliation based on disability is contained on pages 24-28 and (3) violations of wage and hour laws are primarily contained on pages 28-34. The 5AC is then organized with headers to identify specific allegations. For example, allegations related to hostile work environment continuing violations may be found at 34-67; Complaints related discrimination and retaliation are found primarily at 68-71, 149-158; retaliatory and discriminating acts are detailed at 5AC 72-158; disability claims are found at 5AC 159-183. Retaliation alone is found at 5AC 184-192. Thus, it is easy for the reader to understand, despite Defendants' complaints. This is a good faith attempt to comply with the Court Order and comply with Rule 8.

Defendants' stated opposition to venue and all New York State law claims has directly led to an increase in the number claims pleaded. Out of an abundance of caution, New Jersey State claims were added in order to toll the statute of limitations. Failure to allege New Jersey state law claims at this juncture could limit Brooks' legal rights, subject counsel to attorney malpractice claims and invite additional litigation regarding adding New Jersey claims if needed. The claims section accounts for 31 pages. The 5AC still complies with Rule 8. Courts have found that complaints complied with Rule 8 even though they were longer than typical. *Byas v. Yonkers Pub. Sch.*, No. 23-CV-8437 (KMK), 2025 U.S. Dist. LEXIS 63655, at *4 n.1 (S.D.N.Y. Mar. 31, 2025) (a 46 page third amended complaint complied with Rule 8); *Murillo-Roman v. Pension Bds.*, No. 1:22-cv-08365 (JLR), 2024 U.S. Dist. LEXIS 12128, at *13 (S.D.N.Y. Jan. 23, 2024)(a 51 page employment discrimination complaint complied with Rule 8 where it provided minute details of Plaintiff's interaction with her employer); *Hastings v. DOJ, 223 F. Supp. 2d 196,* 2002 U.S. Dist.

LEXIS 18404 (D.D.C. 2002).(a 38 page employment discrimination case complied with Rule 8). Finally, the undersigned communicated with defense counsel about the length of the amended complaint and offered to attempt to further reduce the length of the complaint in order to resolve the issue. Defendants rejected my offer. Ultimately, Plaintiff requests that the Court find that the 5AC complies with Rule 8. Alternatively, if the Court finds that the 5AC does not comply with Rule 8, then Plaintiff requests that the Court exercise its discretion and allow Brooks leave to amend the complaint. Plaintiff has meritorious claims and should be allowed to have them adjudicated by this Court. Not allowing Brooks to amend the complaint would deny Brooks any opportunity to obtain relief.

**B. New York Law Applies to This Case**

**1. Defendants Waived All Arguments Regarding Venue and Consent to Follow New York Law**

In August 2018, Plaintiff and Defendant Ironshore Management, Inc. and Ironshore Services, LLC executed an employment agreement with Brooks which states in pertinent part, "The Company's offer of employment shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of conflicts of law thereof THE PARTIES HEREBY AGREE THAT EXCLUSIVE JURISDICTION WILL BE IN A COURT OF COMPETENT JURISDICTION IN THE NEW YORK COUNTY, NEW YORK AND HEREBY WAIVE OBJECTION TO THE JURISDICTION OR TO THE LAYING OF VENUE IN ANY SUCH COURT." A copy of the employment agreement is annexed hereto as Declaration of Patricia Brooks ("Brooks Decl.") Ex 1. This agreement applies to all Defendants' arguments that this case is improperly venued and the Court has no jurisdiction are waived and should not be considered. Further, Defendants agreed to follow New York State law.

**2. Brooks Properly Chose to Bring Her Case in The Southern District of New York.**

Even though Defendants waived venue, jurisdiction and choice of law arguments, Plaintiff will still address their arguments to the extent the Court considers them. Change of venue is not appropriate as a matter of law. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The decision to transfer venue is within the discretionary authority of the court based on "an individualized, case-by-case consideration of convenience and fairness." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v Reyno*, 454 US 235, 255 [1981]). "This is especially true where plaintiff's chosen forum is its principal place of business." *Starr Indem. & Liab. Co. v Brightstar Corp.*, 324 F Supp 3d 421, 433 [S.D.N.Y. 2018]). "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) (internal quotation marks omitted); see also *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) (plaintiff's choice of forum "is given great weight").

Courts "appl[y] the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). The relevant factors are discussed below. *Goggins v Alliance Capital Mgt., L.P.*, 279 F Supp 2d 228, 232 (S.D.N.Y. 2003). Brooks' declaration provides information related to jurisdiction and as such it may be considered by the Court. *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004), Brooks Decl.

**(1) the plaintiff's choice of forum** A party seeking to transfer under §1404(a) bears the "burden of making out a strong case for a transfer," which Defendants cannot do. Brooks is a New

York-based employee of Defendants. Timely discriminatory acts occurred within New York City. Her home office has always been in New York City. Her team is based in New York City. Her managers are based in New York. Further, Defendants withheld New York State and New York City taxes.This factor is in Brooks' favor.

**(2) the locus of the operative facts** As stated above, many acts occurred in New York City. For these reasons, this factor is in Brooks' favor.

**(3) the convenience and relative means of the parties.** This Court is a Convenient venue for all parties. Two of the three individual defendants work in the Southern District. Like plaintiff, Policastro lives in New Jersey. New Jersey residence is still convenient for the parties. See *D.H. Blair* 462 F3d at 107. Defendant McLaughlin is not based in New York or New Jersey but presumably Liberty will offset any costs associated with defending his case. Finally, Brooks rejects Defendants' paternalistic argument that New Jersey District Court is more convenient for her. Courts in this District rejected that argument three generations ago. See *Heiser v. United Air Lines, Inc.*, 167 F. Supp. 237, 1958 U.S. Dist. LEXIS 3408 (D.N.Y. 1958). (If plaintiff is willing to suffer inconvenience and expense by suing in particular forum of his choice, his disposition so to do is entirely his own concern), *Rhodes v. Barnett*, 117 F. Supp. 312, 317 (S.D.N.Y. 1953) (under 28 USCS §1404 defendant may not complain about plaintiff's inconvenience.) For these reasons, this factor is in Brooks' favor.

**(4) the convenience of witnesses.** Most of the individual witnesses live or work close to New York City, such as Brooks, Carballo and Policastro. Ultimately, it would be substantially more convenient for the majority of the witnesses and parties to travel to this Court. For these reasons, this factor is in Brooks' favor.

**(5) the availability of process to compel the attendance of witnesses.** Any witnesses should be produced without much difficulty by the respective parties. Liberty employs most of the witnesses it could be expected to call. At this time, Brooks anticipates being able to call witnesses as needed without the need to compel. For these reasons, this factor is in Brooks' favor.

**(6) the location of physical evidence, including documents.** Virtually all documents will be produced in electronic form. However, any physical evidence would be found in Defendants' Manhattan office, which makes the Southern District of New York exceedingly convenient for this case. For these reasons, this factor weighs in Brooks' favor.

**(7) the relative familiarity of the courts with the applicable law.** Brooks states that New York State and federal law are the relevant laws in this matter. Choice of law is not dispositive in change of venue motions. "[W]hen there is no contention that complex questions of foreign law are involved, 'the fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer. *Dow Jones & Co., Inc. v. Board of Trade Of City of Chicago,* 539 F. Supp. 190, 192 (S.D.N.Y. 1982). For these reasons, this factor is in Brooks' favor.

**(8) the interests of justice, including the interests of trial efficiency.** This Court is more than capable of managing the litigation in this matter, as employment discrimination claims routinely are adjudicated by the Court. For these reasons, this factor is in Brooks' favor.

### 3. New York State Law Applies Due to the Impact of Discrimination

Defendants waived objection to jurisdiction and venue and now argue that this Court lacks subject matter jurisdiction over Plaintiff's NYSHRL and NYCHRL. Defendants misconstrue New

York State's "impact" standard, fails to distinguish inapposite authority, ignores facts in the 5AC and attempts to improperly introduce and even fabricate facts not in the Complaint.

A nonresident under the NYSHRL or the NYCHRL must have an "impact" in New York State or New York City, respectively. *Hoffmann v. Parade Pbls.*, 15 N.Y.3D 285, 289-291 (2010). Hoffman was an age discrimination case based on a single act of wrongful termination of a plaintiff who managed defendant's Georgia office. *Id.* at 288. The impact of the termination was felt entirely in Georgia where the plaintiff worked. Hoffman did not allege that any discriminatory acts happened in New York. Hoffman did not allege a hostile work environment or retaliation or a pattern of discriminatory acts like those alleged in the 5AC. The Hoffman plaintiff never worked in the City or State of New York. *Hoffman* at 292. He worked exclusively as the managing director of the company's Atlanta regional office where he supervised another employee and managed the company's non-New York accounts. *Id.* at 288. Hoffman was terminated when a company executive called him from the Atlanta airport to notify Hoffman that the company was closing its Atlanta office in two months and that Hoffman's employment would end with the closure. *Id.* at 288. After the decision was made to terminate him, Hoffman met in New York with a company officer to unsuccessfully request that the decision be rescinded.

The 5AC in this case alleges a continuous pattern of discrimination, and retaliation beginning in 2016 in New York when Plaintiff worked for Ironshore and continuing after Ironshore was acquired by Liberty where the toxic culture of Ironshore continued to afflict Plaintiff after she was assigned to a unit supervised by former Ironshore employees and her chief tormentor was promoted to be her supervisor.

Courts have held that Hoffman's impact requirement has been satisfied when an employee works out of state from home for a New York company after having previously physically worked

at a New York location. *See, e.g., Wexelberg v Project Brokers LLC*, 2014 US Dist LEXIS 84400, at *34-35 ([S.D.N.Y. Apr. 28, 2014] (R&R by Dolinger, M, M.J.) (adopted June 14, 2014 by Lewis A. Kaplan, J.)(Impact requirement established by plaintiff who was terminated while working from home after plaintiff had previously worked for 5 weeks at employer's New York location).

In a recent case where an employee was terminated while working from his home in Connecticut during the COVID 19 shutdown, Judge Preska held that the *Hoffman* impact requirement was satisfied when an employee worked at the defendant's New York office for ten months prior to the COVID 19 shutdown even though all the alleged discriminatory acts occurred while the plaintiff was working from his Connecticut home. *Shaughnessy v. Scotiabank*, 2024 U.S. Dist. LEXIS 57840 at *20-22 (S.D.N.Y. March 29, 2024) (Loretta A. Preska, J).

A major equitable factor cited by Judge Preska was the apparent deliberate action by the defendants to terminate the plaintiff's contract two months early on the day before he was scheduled to return to the New York office where he would have undeniably been covered by the NYSHRL and the NYCHRL. *Id.* Like Judge Preska in *Shaughnessy*, Judge Kaplan expressed concern that construing the *Hoffman* impact requirement as automatically excluding claims by employees working from home would deny the very class of employees the protection of the law that the legislature and the Hoffman court intended them to have. "[L]ooking only to where the plaintiff was located just before he was terminated (as defendants seem to do) could create a major loophole in the statutory protection that the Court of Appeals envisaged for employees residing out-of-state but working in New York. By the simple stratagem of directing a targeted employee to do his work at home rather than at the New York office where he normally works, and then terminating him a few days or weeks later, the employer would immunize itself from liability under both State and City statutes. It can scarcely be the case that the State Legislature intended to allow

this form of victimization of the very employees whom the Court of Appeals deemed "'those who are meant to be protected'". *Wexelberg*, supra, at 35 citing Hoffman, 15 N.Y.3d at 291.

Like the defendants in *Shaughnessy*the Liberty Mutual Defendants attempted to manipulate the Hoffman impact requirement. Plaintiff has never been employed at any office other than the Defendants' New York office. Defendants continued to deduct New York State and New York City taxes from Plaintiff's pay for three years before changing her tax status to start deducting New Jersey taxes instead of New York taxes beginning in October 2021, after Plaintiff filed her discrimination complaint with the NYSDHR on May 6, 2021. 5AC at 245-247. Defendants changed Plaintiff's tax status in an attempt to evade the jurisdiction of New York State. Respectfully, this Court should heed the admonition of Judge Kaplan and Judge Preska and deny Defendants' attempt to distort the Hoffman impact requirement and deny Brooks protection.

Until her termination, Plaintiff was still classified by Defendants as an employee of Liberty Mutual's New York office on the Defendants' computer records. Costin Decl. Ex. 2 para 7. Plaintiff worked in the New York office on at least eleven occasions between December 2018 until Liberty switched to remote operation due to the national COVID emergency in March 2020. 5AC at 57. Courts presented with this issue agree that application of New York Law is appropriate. *Roddey v. KPMG L.L.P.*, No. 22-CV-7405 (VSB), 2025 U.S. Dist. LEXIS 70708, at *25 (S.D.N.Y. Apr. 14, 2025) (Vernon S. Broderick, J.) (denying motions for dismissal and summary judgment of New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims); *Shiber v. Centerview Partners LLC*, 2024 U.S. Dist. LEXIS 116832, at *1 (S.D.N.Y. July 2, 2024) (Edgardo Ramos, J.) (allowing Plaintiff to reassert previously dismissed claims under the NYSHRL and NYCHRL) For these reasons, the NYSHRL and the NYCHRL apply and the claims should not be dismissed.

**4. New York State Law Applies– The State Of New York Has an Interestin Taxes**

Defendants reclassified Plaintiff as a New Jersey employee for tax withholding purposes in violation of New York law and use this reclassification as a justification to oppose liability under the NYSHRL and the NYCHRL. The reclassification of Plaintiff as a New Jersey employee contravened New York law which recognizes employees who work from home for New York employers as New York State and New York City employees unless the employee is working out of state for the "convenience of the employer." *Speno v Gallman*, 35 N.Y.2d 256,259 (1974) ;. See *New York Tax Treatment of Nonresidents and Part-Year Residents Application of the Convenience of the Employer Test to Telecommuters and Others* by New York State Department of Taxation and Finance Office of Tax Policy Analysis Technical Services Division, TSB-M-06(5)I (May 15, 2006) Costin Decl. Ex. 1[1]. In order for an employee to allocate income between New York and other sources, services performed at the employee's home outside the State of New Yorkmust be performed outside of New York by necessity as opposed to personal convenience.*In re Yager*, Dept. State Tax Comm., TSB-H-84-(93)-I.

The convenience of the employer standard means that work performed by a nonresident New York-based employee at home due to illness or disability is considered to be, and taxed as, work performed in New York.*Churchill v Gallman*, 38 A.D.2d 631, (3d Dep't 1971) ("[W]here the services performed by the petitioner at home in New Jersey were done for reasons of his personal health and convenience, and not for the necessity of the employer, such work days were held to be days worked within the State.") Plaintiff received permission to work from home beginning on November 2, 2018. 5AC at 56-57. Brooks worked from home for the convenience of her employer due to a leg disability. Brooks satisfied the convenience of the employer test since Brooks performed the core duties of her job while working in her home. See Costin Decl. Ex 2 at

[1] https://www.tax.ny.gov/pdf/memos/income/m06_5i.pdf Last viewed September 3, 2026.

3. Accordingly, in exchange for paying taxes to New York State, Brooks obtains the benefits of being protected by New York State discrimination laws. For this reason, New York State and New York City have an interest in obtaining New York State taxes, lawfully owed. New York has not abandoned that right. Accordingly, New York State should have jurisdiction over these claims. For these reasons, all New York State Law Claims should not be dismissed.

**C. Plaintiff's Claims Survive a Motion to Dismiss 12(B)(6)**

When considering a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). To survive the motion, the court must determine whether the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id*. It must contain more than naked assertions devoid of "further factual enhancement." *Id*. And, it must contain more than a "formulaic recitation of the elements of a cause of action." *Id*. As the U.S. Supreme Court explained in *Ashcroft v. Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The facts asserted in the complaint must "give plausible support to a minimal inference of discriminatory motivation" – the inference needed to establish a *prima facie* case of discrimination under the burden-shifting paradigm applicable to Title VII cases under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id*. at 311. However, the court made clear that it is not necessary at the pleading stage for a plaintiff to provide additional facts that would support the plausibility of "the ultimate question of whether the adverse employment action was attributable to discrimination." *Id*. All factual allegations in the complaint are accepted as true and all inferences are drawn in Brooks' favor. *Littlejohn* at 306.

The statute of limitations for Title VII runs from July 9, 2020, which is 300 days prior to May 5, 2021, Brooks' filing of the complaint with the NYSDHR. See 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991).

### 1. Brooks' Race and Color Discrimination Claim **Should Not be Dismissed**

In order to survive a Rule 12(b)(6) motion to dismiss a plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position she sought, (3) suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements and a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action. *Littlejohn* at 311. (applying the federal standard). Under the NYCHRL, Brooks need only allege that she was treated less well because of membership in a protected class. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 110 (2d Cir. 2013).

Brooks easily meets the first two elements: 1) she is African-American and 2) she was qualified for her position since she worked for Defendants until 2021 without any complaints. Brooks also meets the third element in that she endured multiple adverse employment actions. The definition of "adverse action" has changed in light of the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). A plaintiff "need show only some injury respecting her employment terms or conditions." *Muldrow* at 359. A complainant need only show a "disadvantageous" change in an employment term or condition. *Muldrow* at 354. Significantly, Brooks is permitted to "create a mosaic with the bits and pieces of available evidence" that, taken together, support a plausible inference of intentional discrimination." *Buon v. Spindler*, 65 F.4th 64, 84 (2d Cir. 2023).

Here, Defendants engaged in a number of discriminatory acts including condoning a racist joke (5AC at 67-69), asserting false accusations of Plaintiff improperly doing her job (5AC para. 60, 81, 92-94), instituting weekly supervision meetings (5AC 87, 95-96), assigning Brooks the most difficult work (5AC 90, 116), denying training (5AC at 91) threatening her employment (5AC at 82, 112, 125-133, 143-147), disciplining Plaintiff, but not disciplining her coworkers for engaging in the same actions as Plaintiff (5AC at 86, 100-105, 117-121), isolating Brooks from coworkers (5AC at 87-91), enforcing unannounced performance goals (5AC at 114-116), issuing unfounded disciplinary writeups (5AC at 98-106), issuing a written disciplinary warning (5AC para. 125-135), issuing a negative evaluation, reducing her bonus (5AC at 112), issuing a final warning (5AC at 143), placing Plaintiff on probation (5AC at 144-152), and ignoring objective evidence Brooks provided that showed Defendants accusations were not accurate.

The Second Circuit recognized these facts as adverse actions long before *Muldrow*. For example *See Millea v. Metro-North R.R.*, 658 F.3d 154, 165 (2d Cir. 2011) (finding the placement of a disciplinary document in an employee's file can reduce likelihood of future bonus, pay raises and promotions.); *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 65 (E.D.N.Y. 2002) (subjecting an employee to harsher discipline than white employees is an adverse action). *See Henvill v. Metro. Transp. Auth.*, 600 F. App'x 38, 39 (2d Cir. 2015) (only the Plaintiff and not white employees who committed the same violations were not disciplined). See *also Buon* at 84 (Dismissal was improper where Plaintiff "alleged a series of instances of disparate treatment in the workplace where she was allegedly subjected to job requirements and to discipline that was different than employees outside her protected class"); A reduction in a bonus is an adverse material action as it is a material loss of the benefit of income. *See Davis v. N.Y.C. Dep't of Educ.*, No. 10-cv-3812 (KAM)(LB), 2014 U.S. Dist. LEXIS 30784, at *20 (E.D.N.Y. Mar. 7, 2014).

Finally, an inference of discrimination occurs with "showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). In doing so, she must show that she was "'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Id*. (citations omitted). This showing "must be judged based on (1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id*. at 40. Plaintiff need not show that her situation was *identical* to that of someone outside her protected group who was not disciplined as severely, but she must demonstrate a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id*.

In this case an inference of discrimination is shown by Caraballo's racist chicken comment epitomizes as well as his unfounded constant harassment of Brooks since 2017. Carabello transformed Brooks a from a good long term employee into a poor employee who faced imminent termination within a matter of months. An additional inference of discrimination is found in the lack of discipline of fellow DART Team member Joe Caruso received for doing the same acts as Brooks. 5AC at 216-217. For these reasons, Defendants' motion to dismiss should be denied.

### 2. Brooks' Hostile Work Environment Claim**Should NotBe Dismissed**

Brooks plausibly pleads a hostile work environment, which occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys*., 510 U.S. 17, 21 (1993). To establish an NYCHRL violation, Plaintiff must show by a preponderance of the evidence that she has been treated less well than other employees due to unlawful discrimination. *Hodgson v. City of New*

*York*, 2013 U.S. Dist. LEXIS 31709, 14-16 (S.D.N.Y. Mar. 7, 2013). "Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim" as long as there is "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *See Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir. 2002).

The Second Circuit has routinely held that juries can best conclude whether harassing conduct and the use of racial and ethnic slurs create a hostile work environment is best left to a jury. For example, the Second Circuit in*Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536, 543-544 upheld a jury's determination for Plaintiff after hearing evidence of discriminatory statements based on race and the harasser "intentionally interfered with Sooroojballie's professional advancement and potential promotions, drafted a series of false counseling memoranda, and falsely accused Sooroojballie of committing vandalism by intentionally sabotaging a boiler." *See also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 23-24 (2d Cir. 2012) (reversing District Court's dismissal finding that the use of ethnic slurs, harassment and bullying could be used by a jury to find a hostile work environment)

The discriminatory acts described above constitute the facts that create Plaintiff's hostile work environment. Years of harassment, isolation and ignored complaints by management from 2017 through 2024 is "discriminatory intimidation, ridicule, and insult, that is 'sufficiently severe or pervasive." *Harris* at 21. Brooks' conditions of employment were altered over the years and certainly by 2021 she worked in an abusive working environment. For these reasons, Plaintiff requests that the Court deny Defendants motion to dismiss the Second Claim of Hostile Work Environment in violation of Title VII.

a. The Doctrine of Continuing Violation *Allows Consideration* of incidents before July 9, 2020

Under Title VII, the statute of limitations for a hostile work environment is extended for a plaintiff who files a complaint about a continuing policy of discrimination for all discriminatory acts committed under that policy, whether or not they occurred outside the limitations period, so long as one discriminatory act occurred within the limitations period. *See Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). "Hostile environment claims … involve[s] repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts. "*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002) (citations omitted). The continuing violation doctrine thus applies to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. *Gonzalez v Hasty*, 802 F3d 212, 220 [2d Cir 2015]) (Citing *Morgan*, 536 U.S. at 114-15.)

Throughout her employment, Defendants engaged in a policy and practice of 1) fostering an environment which allowed statements and acts that demeaned Brooks, 2) isolating and stigmatizing Brooks from co-workers, 3) and ignoring her complaints of discrimination and retaliation.

Brooks endured demeaning acts such as the erection of a Segregation Wall, complaints that Brooks smelled, a co-worker's complaint that Brooks did not do her job, and Caraballo's making fun of Brooks while she worked behind the Segregation Wall (5AC at 34). Brooks experienced managers making unsupported accusations about her work and ability. In 2017, her managers made unsubstantiated allegations that she falsified her time records. 5AC at 34. Additionally,

Defendants ignored and failed to investigate or act on any of Brooks' complaints of a hostile work environment and discrimination. 50-51, 66-71, 149-158.

**b.** *Caraballo's Actions and Statements*

For years, Caraballo's false and negative statements about Brooks undermined her ability to do her job. Since at least 2017, Caraballo publicly stated that Brooks did not know what she was doing and he questioned her ability to do her work. 5AC at 48-53. He walked to her and said in a loud, clear, smug, condescending tone in sum and substance "You seem to be having trouble" and then he walked away. 5AC at 48. Brooks complained to Policastro who failed to take any actions regarding her complaints. Brooks 5AC at 51. Finally, Caraballo confidently made a racist joke about black people and Juneteenth Day by stating "Hmmm, maybe I should get some fried chicken to celebrate!" 5AC at 65.

The isolation of Brooks from her co-workers continued after July 9, 2020. Once Caraballo became Brooks' supervisor, he arranged the work on the DART Team so that Brooks no longer had a professional need to communicate with her co-workers. 5AC 88. This also increased her workload. 5AC at 87. As a result, Brooks had fewer people she could turn to for support about work. Id. Caraballo next penalized her for communicating with others outside of the DART team to get information. 5AC at 89-91. As a result, each and every allegation may be considered a continuing violation. Plaintiff requests that the Court deny Defendants' motion to dismiss.

**D. Brooks' Disability and Failure to Accommodate Claims Should Not Be Dismissed**

Brooks alleges disparate treatment and failure to accommodate under the ADA. A failure to accommodate a disability requires that (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) the employer covered by the statute had notice of his disability; and (3)

with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations" *Noll v International Business Machines Corp.*, 787 F3d 89, 94 (2d Cir 2015). Disparate treatment requires that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability. *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 127 (2d Cir. 2019).

Brooks suffered from stress. 5AC at 159-161. On February 17, 2021, Brooks requested the reasonable accommodation of a transfer away from Defendants Caraballo and Policastro and go to a new team. 5AC at 72. Defendants denied her reasonable accommodation request for a transfer and Brooks took medical leave by April 2022 due to stress created at work. 5AC at 2, 72-73, 167.

Defendant McLaughlin ignored Brooks' emails and failed to communicate with Brooks. 5AC at 169-183. In or around October 2022, Defendants barred Plaintiff's access to Liberty's internal job postings and refused her request to reinstate her access. 5AC at 171. In November and December of 2022, Brooks provided Defendant McLaughlin with approximately twenty job postings she was interested in that she found on external websites. 5AC at 173. External job search websites are not nearly as comprehensive as internal job search sites enjoyed by Liberty's employees. id. Brooks sent Defendant McLaughlin an additional three postings in January and February 2023 with three additional jobs she found on an external website. 5AC at 175. On February 14, 2023, Defendant McLaughlin wrote back to Brooks in sum and substance "I can confirm that we are actively working on your request and I hope to have further update for you shortly. Once I have further update I will be reaching out immediately." 5AC 176.

The disparate treatment and failure to accommodate are both supported by Defendants' refusal to place Brooksinto a job. On July 28, 2022, Defendant McLaughlin informed Brooks that he had placed other employees in the past like her and that he should be able to transfer Brooks in a few weeks. 5AC at 166. However, he did not place her stating that her requested reasonable accommodation would "prevent your current management from seeking opportunities in the company." 5AC at 177. Defendants employ over 50,000 employees and refused to find one job for Brooks. 5AC at 182. Defendants refused to place Brooks in a job in retaliation for her asking for a reasonable accommodation. For these reasons, Plaintiff respectfully requests that the Court not dismissthe ADA claims for failure to accommodate and disparate treatment.

**E. Brooks Retaliation Claims Should Not Be Dismissed**

To state a *prima facie* retaliation, claim under Title VII and the ADA, a plaintiff must allege (1) participation in a protected activity, (2) defendants' knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Littlejohn* at 316. An adverse employment action, in the context of a retaliation claim, "is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington Northern & Santa Fe Railway Co. vWhite*, 548 U.S. 53, 57 (2006)). "Context matters" in this analysis: something might be a "petty slight" to one person but "matter enormously" to another, such that it could "deter a reasonable employee from complaining about discrimination." *Burlington Northern*, 548 U.S. at 69. "This . . . covers a broader range of conduct than does the adverse-action standard for claims of [substantive] discrimination," *id.*, which are limited to "discriminatory actions that affect the terms and conditions of employment," *Burlington Northern*, at 64. See also *Massaro v Bd. of Educ.*, 774 F App'x 18, 22 [2d Cir 2019].

There is no question that Defendants knew of Brooks' participation in protected activity. Brooks filed two complaints with the New York State Division of Human Rights alleging Caraballo and others discriminated against her on May 6, 2021, and December 6, 2021. 5AC at 72 and 151. Brooks complained about Caraballo's discrimination to the Compliance Department 5AC at 150. Brooks emailed a combination of human resources, Caraballo and Policastro multiple times and repeatedly complained about being a victim of discrimination and retaliation: January 4, 2022 (5AC at 152) January 7, 2022 (5AC at 153), January 14, 2022 (5AC at 154), January 20, 2022 (5AC at 155), March 23, 2022 (5AC at 156). Brooks complained to Policastro about Caraballo's discrimination against her well before July 9, 2021. (5AC 2, 50, 63, 67, 69). Asking for and using a reasonable accommodation is protected activity, as is questioning Defendants' failure to allow her to return to work after she was ready. Additionally, when Brooks was finally placed in a new position in 2024, she was not adequately trained, was disciplined and finally terminated. Brooks suffered numerous adverse employment actions that occurred shortly after she engaged in protected behavior as described in the 5AC. For these reasons, Plaintiff asserts that the claim of retaliation should not be dismissed.

### F. Brooks NJLAD Claims Should Not Be Dismissed

If the Court determines that venue is not proper in New York State and the case should be transferred to New Jersey District Court (which Plaintiff vigorously opposes), then Plaintiff respectfully requests that Court not decide issues of New Jersey law. However, if the Court is inclined to rule on the NJLAD, then Plaintiff states that the NJLAD claims should not be dismissed. At the outset NJLAD disparate treatment and retaliation claims are adjudicated in the same manner as Title VII claims. *Domb v. Metro. Life Ins. Co.*, 2003 U.S. Dist. LEXIS 13790, at *31 (S.D.N.Y. July 30, 2003). Brooks rests on her arguments regarding Title VII analysis.

Brooks establishes a claim for a hostile work environment based on race and color under the NJLAD which requires proof that defendants' conduct "(1) would not have occurred but for the employee's race; and that the conduct was (2) severe or pervasive enough to make a (3) reasonable person of the plaintiff's race believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Taylor v. Metzger*, 152 N.J. 490, 706 A.2d 685, 688-89 (N.J. 1998).

The analysis for this claim draws on the same facts cited above and reaches the same conclusion. As to the first element, Brooks has alleged that non-African-American employees were not subjected to the racial hostility expressed by Caraballo and condoned by Defendants. Further, Caraballo showed his motivation by making a racist comment to all co-workers. As to the second element, Caraballo's rude, offensive, belittling and demeaning comments of nearly five years, the harassment of citing Brooks for fabricated work violations, management's inaction based on her complaints, and the isolation Defendants subjected her to is severe or pervasive. A reasonable African-American would believe that isolation, unsubstantiated discipline, and being ignored at work is a hostile or abusive environment. For these reasons, Brooks requests that the court not dismiss the NJLAD claims in 17 through 22.

## IV. CONCLUSION

Defendants do not move to dismiss the FLSA claims and NJWHL claims. (claims 23-24 and 29-32. For the above reasons, Defendants' Motion for Partial Summary Judgment and to Change Venue should be denied in its entirety.

Dated: Bronx, NY
September 4, 2026

The Law Ofc. of Delmas A. Costin Jr., P.C.

By: /s/ Delmas A. Costin, Jr.

Delmas A. Costin, Jr., Esq.
930 Grand Concourse, Ste. 1B
Bronx, NY 10451
(718) 618-0589 (O)
(347) 510-0099 (F)
dacostin@dacostinlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO 22 NYCRR 202.8-b(c)**

I certify that, according to the word processing system used to prepare Plaintiff's Memorandum of Law in support of damages, attorneys' fees and costs after an inquest. This document contains 8,381 words excluding the caption, table of contents, table of authorities and signature block. This document complies with the word count limit of Local Civil Rule 7.1 (c).

Dated: Bronx, NY
September 4, 2026

The Law Ofc. of Delmas A. Costin Jr., P.C.

By: /s/ Delmas A. Costin, Jr.
Delmas A. Costin, Jr., Esq.
930 Grand Concourse, Ste. 1B
Bronx, NY 10451
(718) 618-0589 (O)
(347) 510-0099 (F)
dacostin@dacostinlaw.com

*Attorneys for Plaintiff*